**McNAMARA GOLDSMITH, P.C.**
Eugene N. Goldsmith, ASB No. 010254
eng@mgm-legal.com
1670 E. River Rd., Ste. 200
Tucson, Arizona 85718-5834
Telephone: (520) 624-0126
Facsimile: (520) 624-9238

**MILBERG LLP**
Andrei Rado
arado@milberg.com
One Pennsylvannia Plaza, 49th Floor
New York, New York 10119
Telephone: (212) 594-5300
Facsimile:  (212) 868-1229

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| RALPH SACZAWA, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> AUDIOEYE, INC., NATHANIEL BRADLEY, AND EDWARD O'DONNELL <br><br> Defendants | CASE NO. <br><br> **CLASS ACTION** <br><br> COMPLAINT FOR: <br><br> 1.    Violation of the Securities Exchange Act of 1934. <br><br> JURY TRIAL DEMANDED |

CLASS ACTION COMPLAINT

1    Plaintiff alleges the following upon personal knowledge as to his own acts.  The
2  remaining allegations are made upon information and belief based on an investigation conducted
3  by Plaintiff's counsel, which included, among other things, a review of the facts and
4  circumstances alleged herein, including, without limitation: (a) review and analysis of certain
5  filings made by AudioEye, Inc. with the United States Securities and Exchange Commission
6  ("SEC"); (b) review and analysis of certain press releases, public statements, news articles, and
7  other publications disseminated by or concerning Defendants herein and related parties; (c)
8  review and analysis of certain press conferences, analyst conference calls and conferences, and
9  the corporate website of AudioEye, Inc.; and (d) a review and analysis of certain other
10  information, documents, and materials concerning AudioEye, Inc., and the other Defendants
11  named herein. Plaintiff believes that further substantial evidentiary support will exist for the
12  allegations herein after a reasonable opportunity for discovery.  Many of the facts supporting the
13  allegations contained herein are known only to Defendants or are exclusively within their
14  custody and/or control.

15              **NATURE OF THE ACTION AND OVERVIEW**

16    1.    Plaintiff  brings this action individually and on behalf of a class of persons who
17  purchased or otherwise acquired the securities of Defendant AudioEye, Inc. (the "Class") from
18  May 5, 2014 to April 1, 2015 (the "Class Period") and were damaged thereby, seeking to
19  pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

20    2.    AudioEye is the creator of patented audio browsing and automated publishing
21  and accessibility technology platforms that create voice-driven technologies to enhance the
22  mobility, usability, and accessibility of Internet-based content in the United States. The
23  company develops patented, Internet content publication and distribution software that enables
24  conversion of any media into accessible formats, and allows for real-time distribution on any
25  Internet-connected device. It serves "…private- and public-sector…" customers, such as
26  corporate publishers; consumer Websites; federal, state, and local governments and agencies;
27  and mobile advertisers.

28

3.  On April 1, 2015, AudioEye shocked investors when it announced that its previously issued financial statements for the quarters ended March 31, June 30, and September 30, 2014, will be restated due to improper accounting. Furthermore, AudioEye stated that its preliminary earnings release issued by the Company on January 12, 2015, relating to the quarter and year ended December 31, 2014, should no longer be relied upon.

4.  Upon the release of this news, the Company's shares declined approximately 25%, or $.11 per share, to close on April 1, 2015 at $.305 per share.

5.  The Complaint alleges that, throughout the Class Period, defendants failed to disclose material adverse facts about the Company's financial well-being. Specifically, defendants failed to disclose or indicate the following: (1) that the Company improperly accounted for all revenue from non-cash exchanges of a license of the Company for services of the Company's customer; (2) that the Company lacked adequate internal and financial controls; and (3) that, as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times.

6.  As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class Members have suffered significant losses and damages.

## PARTIES

7.  Plaintiff Ralph Saczawa purchased AudioEye, Inc., common stock at artificially inflated prices during the Class Period, as set forth in the accompanying certification, and lost money as a result of Defendants' wrongdoing.

8.  Defendant AudioEye, Inc. ("AudioEye" or the "Company") is a corporation organized and existing under the laws of the state of Delaware, with its headquarters and principal place of business located at 5210 E. Williams Circle, Suite 500, Tucson, Arizona 85711.  AudioEye's common stock is traded on the OTC.

9.  Defendant Nathaniel Bradley ("Bradley") was at all relevant times herein the Chief Executive Officer ("CEO") of AudioEye.

10. Defendant Edward O'Donnell was at all relevant times herein the Chief Financial Officer of AudioEye, Inc.

11. Defendants Nathaniel Bradley and Edward O'Donnell are collectively referred to hereinafter as the "Individual Defendants." The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of AudioEye reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market. Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations that were being made were then materially false and misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

## JURISDICTION AND VENUE

12. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

13. This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

14. Venue is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa.  Many of the acts and transactions alleged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this Judicial District. Additionally, AudioEye's principal executive offices are located within this Judicial District.

15.     In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the U.S. mails, interstate telephone communications, and the facilities of national securities exchanges.

## SUBSTANTIVE ALLEGATIONS

### BACKGROUND

16.     AudioEye is the creator of patented audio browsing and automated publishing and accessibility technology platforms that create voice-driven technologies to enhance the mobility, usability, and accessibility of Internet-based content in the United States. The company develops patented, Internet content publication and distribution software that enables conversion of any media into accessible formats, as well as allows for real-time distribution on any Internet-connected device. Its solutions and services enable users of AudioEye-enabled customers' Websites or mobile environments to transact, communicate, and engage with products, brands, and content using its patented interactive voice technologies. The company offers Audio Internet, a software-as-a service technology platform to Internet and mobile publishers, developers, owners, and operators.  It serves private- and public-sector customers, such as corporate publishers; consumer Websites; federal, state, and local governments and agencies; and mobile advertisers.

### DEFENDANTS' FALSE AND MISLEADING STATEMENTS DURING THE CLASS PERIOD

17.     The Class Period begins on May 5, 2014.  On that date the Company issued a press release entitled "AudioEye Inc., Expects First Quarter Revenue to More Than Quadruple to Over $1.0 Million vs. $.02 Million in Prior Year Period." Therein, the Company stated in relevant part:

> TUCSON, AZ--(Marketwired - May 5, 2014) - AudioEye®, Inc. (OTCQB: AEYE) ("AudioEye"), creator of the Audio Internet® patented audio browsing and automated publishing technology platform, today announced that it expects to report revenue in excess of $1.0 million for the first quarter of 2014. AudioEye also announced that it will host a first quarter 2014 earnings investor conference call at 11:00 a.m. Eastern Time on Thursday, May 15, 2014 (details provided below).

This represents a sequential increase in recognizable revenue of approximately 33% relative to revenue of $752,092 in the fourth quarter of 2013 and an increase of more than 345% when compared with revenue of $224,297 in the prior-year quarter.

In addition to top line revenue growth, AudioEye maintained gross profit margins of approximately 75% of sales in the first quarter of 2014.

AudioEye also achieved the following key milestones during the first quarter of 2014:

Developed an enterprise and government sales pipeline that management believes will provide the necessary foundation to establish AudioEye as the leading solutions provider, thought leader and largest producer in the multi-billion dollar technology accessibility compliance market.

Ended the quarter with an enterprise and government sales pipeline in excess of $50 million of identified opportunities now under various stages of contract negotiation, management, development and AudioEye's sales process.

Launched its 2014 U.S. government partnership sales and business development initiative and signed contracts with several large well-regarded reseller partners to accelerate the accomplishment of strategic sales goals.

Developed revenue producing technology licensing contracts and launched sales activities within the behavioral healthcare, U.S. government and enterprise markets.

Established state government sales initiative and promoted Richard Keppler to a dedicated sales role focused on the governments of the 50 U.S. states.

Received $3.5 million of additional equity growth financing at the beginning of the quarter.

Trading in AEYE shares transitioned from the OTC BB to the OTC US market effective February 13, 2014.

Commenced the process and steps necessary to up list the Company's common stock to the NASDAQ Capital Market as soon as practicable.

Launched its Audio Internet® Version 5.0 Platform.

Installed Audio Internet® 5.0 onto the University of Arizona's website.

Named Paul Arena as AudioEye's Executive Chairman.

Welcomed Sandy Purcell as the newest independent member of the Company's Board of Directors.

"Our first quarter revenue growth enhances our confidence in AudioEye's business strategy and its patented technology, which solves critical Internet and mobile content accessibility issues for our clients," stated Nathaniel Bradley, the Company's Chief Executive Officer. "Our expanding team of technology and sales professionals is focused on achieving our goals for 2014. Revenue for the

first fiscal quarter ended March 31, 2014 exceeded $1.0 million, an increase of more than 345% from prior-year quarterly revenue of $224,297. The annualized revenue 'run rate' in the first quarter exceeded $4 million. We reiterate our revenue guidance for the current year and believe the Company should achieve an annualized revenue 'run rate' of $8 million or higher within the next two quarters. Our proprietary patented technology is transforming the accessibility of Internet websites by significantly reducing the time and other resources that publishers must invest to become compliant with federal mandates."

"Customers are demanding more from us, and we believe that our team is meeting that demand with exceptional service and highly scalable technology solutions delivered through the Audio Internet® platform, which is now capable of meeting and exceeding our customers' accessibility, mobility and usability needs," continued Bradley. "The growth and broader utilization of AudioEye's Audio Internet® platform is bringing about a more accessible Internet experience, and this is a source of great pride among our team members, stakeholders and partners. We have successfully executed intellectual property licenses within the U.S. government and behavioral healthcare markets. We continue to improve upon our patented technology, grow our clientele and further position the Company for success. Our first quarter performance brings our objective of creating a robust Audio Internet even closer to fruition

**Forward-Looking Statements**

This release includes forward-looking statements contained within Section 27A of the Securities Act of 1933, as amended, and Section 21E of the Securities Exchange Act of 1934, as amended. All statements regarding the Company's expected future financial position, results of operations, cash flows, financing plans, business strategy, products and services, competitive positions, growth opportunities, plans and objectives of management for future operations, as well as statements that include words such as "anticipate," "if," "believe," "plan," "estimate," "expect," "intend," "may," "could," "should," "will," and other similar expressions are forward-looking statements. All forward-looking statements involve risks, uncertainties and contingencies, many of which are beyond the company's control, which may cause actual results, performance, or achievements to differ materially from anticipated results, performance, or achievements. Factors that may cause actual results to differ materially from those in the forward-looking statements include those set forth in the AudioEye's Form 10-K and other reports filed with the SEC. AudioEye is under no obligation to (and expressly disclaims any such obligation to) update or alter its forward-looking statements, whether as a result of new information, future events or otherwise.

18.     On May 5, 2014, AudioEye filed its Quarterly Report with the SEC on Form 10-Q for the 2014 first fiscal quarter. The Company's 10-Q was signed by defendant Bradley and reaffirmed the Company's financial results previously announced on May 5, 2014.

19.     The Company's 10-Q filed on May 15, 2014, also contained Sarbanes-Oxley required certifications, signed by defendant Bradley, who stated:

20.     I, Nathaniel Bradley, certify that:
        1.      I have reviewed this quarterly report on Form 10-Q of AudioEye, Inc.;

2.      Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.      Based on my knowledge, the financial statements and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.      The registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15-d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

a)      designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

b)      Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

c)      Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

d)      Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.      The registrant's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

a)      All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

b)      Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

21.     On August 11, 2014, AudioEye issued a press release titled "AudioEye, Inc. Reports Net Income of $1.0 Million on Revenue of $3.0 Million for Second Quarter of 2014.

22.     Therein, the Company stated, in relevant part:

Highlights of the second quarter and the period subsequent to the end of June 30, 2014 include the following:

The Company secured approximately $1 million in contracts with leading national health care companies during the second quarter of 2014.

The Company executed licenses for its technology with organizations involved in the consumer packaged goods (CPG), retail and couponing, and online job posting verticals during the most recent quarter.

The Company initiated a pilot program to audio-enable websites for one of the largest telecommunications companies in the U.S.

The Company executed customer applications involving security, container tracking, mobile asset monitoring, GPS tracking and mobile communications within the logistics, transportation, maritime, shipping, vending, trucking, rail and freight industries.

The Company has identified opportunities and is involved in discussions with over 50% of all federal government agencies regarding the procurement of its services.

The Company has identified opportunities and is involved in early discussions with numerous state, local and municipal governments for the procurement of its services.

The Company has obtained scope of work parameters and identified business opportunities with multiple professional sports teams/leagues, one of the largest biopharmaceutical companies in the U.S., and numerous other enterprises that are expected to result in contract signings over the next several months.

The Company has contracted its services out to several non-profit advocacy groups that are involved with the disabled community.

Warrants for approximately 10 million shares of the Company's common stock were exercised for cash by insider and existing investors.

The Company increased the amount of cash available to approximately $3.1 million at the time of this release.

The Company expects to be cash flow positive before year-end.

The Company has engaged a commercial specialist from the U.S. Department of Commerce, U.S. Global Markets Agency and their

counterparts in U.S. embassies abroad to engage in the study, strategy and development of targeted International markets.

The Company upgraded its platform technologies to introduce its proprietary Real-Time Auto-Discovery & Enablement feature, which allows AudioEye to greatly streamline the onboarding process of new customers, while providing additional solution flexibility.

The Company welcomed Congressman Tony Coelho and Matthew Mellon as the newest independent members of its Board of Directors.

The Company has developed five new patents covering new inventions in the areas of interactive networked voice technology, voice analytics, real-time content normalization and auto discovery technologies.

The Company has developed and is executing a strategy to apply its patented voice technology platform in the field of virtual currency payments processing

23.     On July 25, 2014, AudioEye filed its Quarterly Report with the SEC. The Company's 10-Q was signed by the Individual Defendants, and reaffirmed the Company's financial results previously announced that day. The Company's 10-Q also contained Sarbanes Oxley required certifications, substantially similar to the certifications contained in ¶ 19, *supra*.

24.     On November 10, 2014, AudioEye issued a press release titled "AudioEye, Inc. Reports Record Third Quarter Net Income of $1.3 Million on Revenue of $4.8 Million."

25.     Therein, the Company stated, in relevant part:

Revenue for the three months ended September 30, 2014 totaled $4,837,411, which represented a 1,168% increase when compared with revenue of $381,539 in the third quarter of 2013. On a sequential basis, revenue for the third quarter of 2014 increased 61% when compared with revenue of $3,013,033 in the second quarter of 2014.

The Company's annualized revenue "run rate" in the third quarter of 2014 approximated $19.3 million.
AudioEye executed contracts valued at approximately $5.3 million during the most recent quarter, compared with contracts valued at approximately $2.9 million that were executed in the second quarter of 2014.

Costs of services totaled $1,084,988 in the third quarter of 2014, compared with $130,771 in the quarter ended September 30, 2013. Gross profit of $3,752,423 in the third quarter of 2014 compared with gross profit of $250,768 in the prior-year quarter. Gross profit margin approximated 78% of sales in the most recent quarter,

compared with approximately 66% of sales in the prior-year period and 89% of sales in the quarter ended June 30, 2014.

Selling and marketing costs for the three months ended September 30, 2014 and 2013 totaled $546,265 and $117,893, respectively. Such costs totaled $1,301,365 and $167,509 for the nine months ended September 30, 2014 and 2013, respectively.

Research, technology and development costs for the three and nine months ended September 30, 2014 totaled $153,188 and $391,958, respectively. No such expenses were recorded in the prior-year periods.

General and administrative ("G&A") expenses totaled $1,548,581 in the most recent quarter, compared with $889,095 in the third quarter of 2013. For the first nine months of 2014, G&A expenses totaled $4,352,398, versus $1,880,726 in the year-earlier period.

The increases were primarily related to changes in staffing, legal, stock option and warrant expense as well as other expense categories necessary to support AudioEye's growth.

On a sequential basis, G&A expenses increased to $1,548,851 in the third quarter of 2014 when compared with $1,135,947 in the second quarter of 2014.

Depreciation and amortization expense for the three months ended September 30, 2014 and 2013 totaled $189,602 and $89,823, respectively. For the first nine months of 2014, depreciation and amortization expense totaled $462,326, versus $269,135 in the corresponding period of the previous year.

For the three months ended September 30, 2014, AudioEye recorded net income of $1,302,101, or $0.02 per diluted share, compared with a prior-year net loss of ($870,810), or ($0.02) per share. For the nine months ended September 30, 2014, the Company reported a net profit of $894,970, or $0.02 per diluted share, versus a net loss of ($1,796,796), or ($0.04) per share in the nine months ended September 30, 2013.

SaaS and development revenue for the three months ended September 30, 2014 totaled $561,286, which represented a 47% increase when compared with similar revenue of $381,539 in the third quarter of 2013. On a sequential basis, intellectual property ("IP") licensing revenue totaled $4,275,000 in the third quarter of 2014, for an increase of 46% when compared with IP revenue of $2,925,000 in the second quarter of 2014.

"We are establishing AudioEye's patented accessibility technology platform within key strategic market verticals and proving out our revenue model in each," stated Nathaniel Bradley, the Company's Chief Executive Officer. "We will now transition to scaling these opportunities with a focus on providing the highest quality solutions for our customers. While the adoption of our technology by multiple federal, state and local government agencies has been

achieved, we have also developed corporate verticals that provide efficacy and reference accounts that are now being leveraged in support of our continued rapid growth." Emphasis added.

26.    On November 11, 2014, AudioEye filed its Quarterly Report with the SEC. The Company's 10-Q was signed by defendants Bradley and O'Donnell, and reaffirmed the Company's financial results previously announced that day. The Company's 10-Q also contained Sarbanes Oxley required certifications, substantially similar to the certifications contained in ¶ 19, *supra*.

27.    On January 12, 2015, AudioEye issued a press release entitled "AudioEye to Report Profitable Fourth Quarter on Revenue of $3.25 Million."

28.    Therein, the Company stated, in relevant part:

Bookings for the third and fourth quarters of 2014 approximated $5.3 million and $4.7 million, respectively. Approximately $1.0 million, or 19% of total third quarter bookings represented cash contracts, and $2.46 million, or 52% of total fourth quarter bookings consisted of cash contracts, an increase of 146%.

AudioEye recently closed on a private placement of equity consisting of 6,687,500 units, which generated gross proceeds to the Company of approximately $2.675 million.

The Company expects to report at least $3.25 million in revenue for the three months ended December 31, 2014. This compares with approximately $0.75 million in the prior-year quarter, representing a year-over-year increase of more than 332%. Revenue for the twelve months ended 2014 and 2013 approximated $12 million and $1.56 million, respectively, representing a year-over-year increase of more than 665%. Based on information currently available, the Company expects to be profitable for the year ended December 31, 2014.

Over $4.7 million in aggregate contracts were booked during the fourth quarter of 2014. As of December 31, 2014, the Company had unbilled contracts totaling over $1.8 million that will become recognized revenues in 2015.

Monetary contracts executed as a result of the Company's intellectual property licensing strategy increased more than 140%, from $1 million in the third quarter of 2014 to over $2.4 million in the fourth quarter of 2014.

Recognized cash revenue for the three months ended December 31, 2014 totaled over $1 million, representing an increase of more than 81% relative to cash revenue of $0.56 million for the quarter ended September 30, 2014.

The annualized bookings "run rate" for the most recent quarter exceeded $18 million.

Anticipated operating receipts of cash payments of over $2 million at the beginning of the first quarter of 2015 should result in cash on hand in excess of $4 million, the strongest cash position to begin any year in the Company's history.

Projected and budgeted expenses for the first quarter of 2015 should be exceeded by cash inflows from operations. As a result, management believes that AudioEye will become operating cash flow positive during the quarter ending March 31, 2015.

"We are very excited that we have access to more capital than at any time in our history and look forward to becoming operating cash flow positive in the first quarter of 2015, which is a triumph for our team," stated Nathaniel Bradley, Chief Executive Officer of AudioEye, Inc."

29.     The statements set forth in paragraphs 17 through 28 were materially false and misleading when made because Defendants failed to disclose or indicate the following: (1) that the Company improperly accounted for all revenue from non-cash exchanges of a license of the Company for services of the Company's customer; (2) that the Company lacked adequate internal and financial controls; and (3) that, as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times.

30.     THE TRUTH IS REVEALED

31.     On April 1, 2014, Defendants issued a press release entitled "AudioEye Announces That Financial Statements and Previously Issued Guidance for Fourth Quarter and FY2014 Cannot Be Relied on and That Material Restatements Will Be Forthcoming."  In that release Defendants, gave investors a preview of the truth.   Specifically, Defendants stated:

AudioEye, Inc. (OTCQB: AEYE) ("AudioEye" or the "Company") today announced that on March 26, 2015, the Audit Committee of the Company's Board of Directors, based in part on the recommendation of the Company's management and in consultation with the Company's auditors and advisors, concluded that because of errors identified in the Company's previously issued financial statements, the Company will restate its previously issued financial statements for the quarters ended March 31, June 30 and September 30, 2014.

The Audit Committee also authorized an internal review of controls and policies. Accordingly, investors should no longer rely upon the Company's previously released financial statements or other financial data for these periods, including any interim period financial statements, and any earnings releases relating to these

periods. In addition, investors should no longer rely on the preliminary earnings release issued by the Company on January 12, 2015 relating to the quarter and year ended December 31, 2014.

The Company also announced that it will host an investor conference call at 2:30 p.m. Eastern Time today, Wednesday, April 1, 2015 (see details below).

FINANCIAL STATEMENT ISSUES

Based on the review to date, the Company anticipates removing all revenue derived from non-cash exchanges of a license of the Company for the license of the Company's customer and all revenue from non-cash exchanges of a license of the Company for services of the Company's customer, and reducing by a material amount previously reported license cash revenue. The aggregate amount of revenue reported for the first nine months of 2014 for non-cash transactions was approximately $8,100,000. The reversal of revenue from the non-cash exchange transactions will also impact additional accounts, including reductions in Prepaid Assets, Intangible Assets and Amortization Expense. The Company also expects that certain expenses will be reclassified. Additional adjustments may be identified pursuant to the outcome of the ongoing review and analysis. The Company has also begun a review of calendar year 2013 activity to determine whether there are any adjustments that may impact previously issued financial statements. There are no known adjustments to 2013 financials at this time. The cash balance is not impacted by these changes.

The Company, along with its advisors and outside accountants, continues to perform its review in order to conclude and quantify the impacts of the above issues upon financial statements. The Company expects to complete this process and file its restated financial statements over the course of the next several weeks. The Company does not expect to timely file its Form 10-K for calendar year 2014 or its Form 10-Q for the quarter ended March 31, 2015. Subject to the completion of the audit and the restatement of previously issued financial statements, the Company expects to be timely with its filing of the Form 10-Q for the quarter ended June 30, 2015.

In accordance with Section 404 of the Sarbanes-Oxley Act of 2002, the Company's management has been assessing the effectiveness of the Company's internal controls involving financial reporting and disclosure. Based on this assessment, the Company expects to report material weaknesses in the Company's internal controls and therefore conclude that internal controls over financial reporting and disclosure are not effective.

The Audit Committee and management have discussed the matters described herein, which will also be disclosed in a Current Report on Form 8-K to be filed with the SEC today, with MaloneBailey, LLP, the Company's independent registered public accounting firm.

NEW CHIEF FINANCIAL OFFICER HIRED

Effective March 29, 2015, the Company appointed Donald Weinstein as Chief Financial Officer ("CFO"). Mr. Weinstein will fulfill the CFO role pursuant to an Interim Services Agreement dated March 29, 2015 between the Company and Randstad Professionals US, LP, d/b/a Tatum ("Tatum") (the "Services Agreement").

Also, effective March 29, 2015, Edward O'Donnell resigned his position as the Company's Chief Financial Officer.

Mr. Weinstein, 50, has worked for Tatum, an executive staffing firm, since March 2015. From July 2013 through February 2015, Mr. Weinstein served as CFO of AccessMedia 3. From September 2004 until July 2013, Mr. Weinstein was self-employed as a contract Chief Financial Officer, primarily for private-equity-backed, middle-market companies including Woods Restoration Services, TextbookX.com and BountyJobs, Inc. Prior experience includes serving as Executive Vice President and Chief Financial Officer of MasTec, Inc., a New York Stock Exchange-listed company, and as Senior Vice President and Chief Financial Officer of AGL Resources, Inc., a New York Stock Exchange-listed company and the largest U.S. natural gas distribution company. Mr. Weinstein holds a Bachelor's degree in Accounting from the University of Connecticut.

FIRST QUARTER 2015 CASH BOOKINGS

The Company announced that cash bookings for the quarter ended March 31, 2015 are expected to approximate $2.0 million.

MANAGEMENT COMMENTS

"With great care and expediency, we are committed to both restate our financial statements and cure the control and process issues that created the need for the restatements," said Carr Bettis, Executive Chairman of AudioEye, Inc. "At its core, AudioEye is a technology company with the most complete and functional accessibility solutions available. We are very pleased with feedback from our customers, and our mandate is to pursue with a laser-like focus additional sales, increasing customer adoption rates, and the enhancement of Internet accessibility for all users."

INVESTOR CONFERENCE CALL

The Company will host an investor conference call at 2:30 p.m. Eastern Time (EDT) today, Wednesday, April 1, 2015, to further discuss information disclosed in this news release, as further detailed in a Current Report on Form 8-K to be filed by the Company today.

FORWARD-LOOKING STATEMENTS

This release includes forward-looking statements contained within Section 27A of the Securities Act of 1933, as amended, and Section 21E of the Securities Exchange Act of 1934, as amended. All statements regarding AudioEye's expected future financial

position, results of operations, cash flows, financing plans, business strategy, products and services, competitive positions, growth opportunities, plans and objectives of management for future operations, as well as statements that include words such as "anticipate," "if," "believe," "plan," "estimate," "expect," "intend," "may," "could," "should," "will" and other similar expressions, are forward-looking statements. All forward-looking statements involve risks, uncertainties and contingencies, many of which are beyond AudioEye's control, which may cause actual results, performance, or achievements to differ materially from anticipated results, performance, or achievements. Factors that may cause actual results to differ materially from those in the forward-looking statements include those set forth in AudioEye's Form 10-K and other report filings with the SEC. AudioEye is under no obligation to (and expressly disclaims any such obligation to) update or alter its forward-looking statements, whether as a result of new information, future events or otherwise.Emphasis added. [add a paragraph about how material the $8M is in light of the financials].

32.    Upon the release of this news, the Company's shares declined approximately $.11 per share, or 25 percent, to close on April 1, 2015, at $.305 per share.

## ALLEGATIONS REGARDING SCIENTER

33.    As alleged herein, Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding AudioEye, their control over, and/or receipt and/or modification of AudioEye's allegedly materially misleading misstatements and/or their associations with the Company, which made them privy to confidential proprietary information concerning AudioEye, participated in the fraudulent scheme alleged herein.

## CLASS ACTION ALLEGATIONS

34.    Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of a class (the "Class") of all persons who purchased or otherwise acquired AudioEye securities during the period from May 5, 2014 to April 1, 2015,

inclusive (the "Class Period") and who were damaged thereby. Excluded from the class are Defendants, the officers and directors of the Company at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

35.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, AudioEye's securities were actively traded on the OTC. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by AudioEye or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

36.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

37.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations, and management of AudioEye; and

(c)     the extent to which members of the Class have sustained damages and the proper measure of damages.

38.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

CLASS ACTION COMPLAINT

39.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in managing this action as a class action.

## CAUSATION AND ECONOMIC LOSS

40.     As described herein, during the Class Period, Defendants made or caused to be made a series of materially false or misleading statements about AudioEye's financial, investment and business condition, business practices, and financial and business results, prospects, and operations.  These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of AudioEye's financial, investment and business condition, results, prospects, and operations, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period were widely disseminated to the securities markets, investment analysts, and to the investing public, and resulted in Plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices.  Moreover, upon the revelation to the market and the investing public of the truth concerning AudioEye and its results, operations, and financial position, the market price of AudioEye common stock declined substantially, resulting in significant damages to the Plaintiff and other shareholders.

41.     Had the truth about AudioEye been revealed to the market earlier, Plaintiff and the Class would not have purchased AudioEye common stock or would have purchased the stock only at lower prices.

42.     When the truth about AudioEye was finally fully revealed, a significant portion of the artificial inflation that had been caused by Defendants' false and misleading statements (and omissions) was eliminated from the price of AudioEye's common stock, causing significant losses to Plaintiff and the Class.

43.     Defendants' conduct, as alleged herein, proximately caused foreseeable losses to Plaintiff and the other members of the Class.

44.     The market for AudioEye's securities was open, well-developed, and efficient at all relevant times for the following reasons (among others):

(a)     The Company's shares met the requirements for listing, and were listed and actively traded on OTC;

(b)     As a regulated issuer, AudioEye filed periodic public reports with the SEC;

(c)     AudioEye regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

(d)     The market reacted to public information disseminated by AudioEye;

(e)     AudioEye was followed by numerous securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace;

(f)     The material misrepresentations and omissions alleged herein would tend to induce a reasonable investor to misjudge the value of AudioEye's securities; and

(g)     Without knowledge of the misrepresented or omitted material facts, Plaintiff and the other members of the Class purchased or otherwise acquired AudioEye's securities between the time Defendants made the material misrepresentations and omissions, during which time the price of AudioEye's securities was inflated by Defendants' misrepresentations and omissions.

45.     As a result of the foregoing, the market for AudioEye's securities promptly digested current information regarding AudioEye from all publicly available sources and reflected such information in AudioEye's securities prices.  Under these circumstances, all purchasers and acquirers of AudioEye's securities during the Class Period suffered similar

injury through their purchase or acquisition of AudioEye's securities at artificially inflated prices and a presumption of reliance applies.

**THE STATUTORY SAFE HARBOR FOR**
**FORWARD-LOOKING STATEMENTS IS INAPPLICABLE HERE**

46.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of AudioEye who knew that those statements were false when made.

**COUNT I**

**Violation of Section 10(b) of the Exchange Act and**
**Rule 10b-5 Promulgated Thereunder Against All Defendants**

47.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

48.     This Count is asserted by Plaintiff on behalf of itself and the Class against all the Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder.

49.     During the Class Period, the Defendants carried out a plan, scheme and course of conduct that was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of AudioEye's securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire AudioEye's securities at artificially

1    inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, the

2    Defendants, and each of them, took the actions set forth herein.

3            50.     Defendants, by use of means or instrumentalities of interstate commerce: (i)

4    employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material

5    fact and/or omitted to state material facts necessary to make the statements made not

6    misleading; and (iii) engaged in acts, practices, and a course of business that operated as a

7    fraud and deceit upon the purchasers and acquirers of the Company's securities in an effort to

8    maintain artificially high market prices for AudioEye's securities in violation of Section 10(b)

9    of the Exchange Act and Rule 10b-5.

10           51.     As a result of their making and/or their substantial participation in the creation

11   of affirmative statements and reports to the investing public, the Defendants had a duty to

12   promptly disseminate truthful information that would be material to investors in compliance

13   with the integrated disclosure provisions of the SEC as embodied in SEC Regulation S-K (17

14   C.F.R. § 229.10, *et seq.*) and other SEC regulations, including accurate and truthful

15   information with respect to the Company's operations and performance so that the market

16   prices of the Company's publicly traded securities would be based on truthful, complete, and

17   accurate information.  Defendants' material misrepresentations and omissions as set forth

18   herein violated that duty.

19           52.     Defendants engaged in the fraudulent activity described above knowingly and

20   intentionally or in such a reckless manner as to constitute willful deceit and fraud upon

21   Plaintiff and the Class.  The Defendants knowingly caused their reports and statements to

22   contain misstatements and omissions of material fact as alleged herein.

23           53.     As a result of Defendants' fraudulent activity, the market price of AudioEye

24   securities was artificially inflated during the Class Period.

25           54.     In ignorance of the true condition of AudioEye, Plaintiff and other members of

26   the Class, relying on the integrity of the market and/or on the statements and reports of

27   AudioEye's containing the misleading information, purchased or otherwise acquired AudioEye

28   securities at artificially inflated prices during the Class Period.

55.     The market price of AudioEye's securities declined materially upon the public disclosure of the true facts which had been misrepresented or concealed as alleged herein.

56.     Plaintiff's (and the Class's) losses were proximately caused by Defendants' active and primary participation in AudioEye's scheme to defraud the investing public by, among other things, failing to fully and accurately disclose to investors adverse material information regarding the Company.  Plaintiff (and the members of the Class) purchased AudioEye securities in reliance on the integrity of the market price of those securities, and Defendants manipulated the price of AudioEye securities through their misconduct as described herein.  Plaintiff's (and the Class's) losses were a direct and foreseeable consequence of Defendants' concealment of, among other things, the true state of the business operations, growth prospects, and financial condition of AudioEye.

57.     Throughout the Class Period, Defendants were aware of material non-public information concerning AudioEye's fraudulent conduct (including the false and misleading statements described herein).  Throughout the Class Period, Defendants willfully and knowingly concealed this adverse information and Plaintiff's (and the Class's) losses were the foreseeable consequence of Defendants' concealment of this information.

58.     As a direct and proximate cause of the Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their respective purchases and sales of AudioEye securities during the Class Period.

## COUNT II

### Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

59.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

60.     As alleged herein, The Individual Defendant acted as a controlling person of AudioEye within the meaning of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).  By virtue of their executive positions as alleged above, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making

1    of the Company, including the content and dissemination of the various statements that

2    Plaintiff contends are false and misleading.  Individual Defendants were provided with or had

3    unlimited access to copies of the Company's internal reports, press releases, public filings, and

4    other statements alleged by Plaintiff to be misleading prior to and/or shortly after these

5    statements were issued and had the ability to prevent the issuance of the statements or cause

6    the statements to be corrected.

7         61.     In particular, Individual Defendants had direct involvement in the day-to-day

8    operations of the Company and therefore are presumed to have had the power to control or

9    influence the particular transactions giving rise to the securities violations as alleged herein,

10    and exercised the same.

11         62.     As set forth above, Individual Defendants and AudioEye committed a primary

12    violation of Section 10(b) and Rule 10b-5 of the Exchange Act by the acts and omissions

13    alleged in this Complaint.  By virtue of their positions as controlling persons of AudioEye,

14    Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct

15    and proximate result of the Individual Defendants' wrongful conduct, Plaintiff and the other

16    members of the Class suffered damages in connection with their purchase or acquisition of

17    AudioEye securities during the Class Period.

18    **PRAYER FOR RELIEF**

19    WHEREFORE, Plaintiff prays for relief and judgment, as follows:

20    A.     Determining that this action is a proper class action;

21    B.     Awarding compensatory damages in favor of Plaintiff and the other class

22    members against all Defendants, jointly and severally, for all damages sustained as a result of the

23    Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

24    C.     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in

25    this action, including counsel fees and expert fees; and

26    D.     Awarding such other and further relief as the Court may deem just and proper.

27    **JURY DEMAND**

28    Plaintiff demands a trial by jury of all claims so triable.

1

DATED: April 20, 2015

2

**McNAMARA GOLDSMITH, P.C.**

3

By:    s/ Eugene N. Goldsmith
        EUGENE N. GOLDSMITH

4

        1670 E. River Road, Suite 200
        Tucson, AZ 85718

5

        Telephone:    (520) 624-0126
        Facsimile:    (520) 624-9238

6

        E-mail: eng@mgm-legal.com

7

8

**MILBERG LLP**

9

By:    s/ Andrei V. Rado
        ANDREI V. RADO

10

        One Pennsylvania Plaza, 49th Floor
        New York, NY  10119

11

        Telephone:    (212) 594-5300
        Facsimile:    (212) 868-1229

12

        E-mail: arado@milberg.com

13

*Attorneys for Plaintiff*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| CLASS ACTION COMPLAINT | - 23 - | |