**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

|   |   |
|---|---|
| *In re AudioEye, Inc. Sec. Litig* | ) <br> ) <br> ) <br> ) CV-15-163-TUC-DCB (LEAD) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

The following motions for appointment of lead counsel and lead plaintiff are pending before the Court: Doc. 8, Plaintiffs Saczawa/Gindi; Doc. 9, Plaintiff Morgan; Doc. 10, Plaintiff Stapen; and, Doc. 13, Plaintiffs Globis Capital/Globis Overseas (Globis).[1] The motions to appoint lead plaintiff and lead counsel filed by Morgan and Stapen have since been withdrawn (Doc. 9 and 10) and are now denied as moot. The remaining contenders are Plaintiffs Saczawa/Gindi represented by Milberg (NYC)/McNamara Goldsmith (Goldsmith)(TUC) (Doc. 8) and Globis represented by Kirby McInerney (Kirby) (NYC)/Bonnett Fairbourn Friedman & Balint (Bonnett) (PHX) (Doc. 13). Oral argument was heard by the Court on July 21, 2015 and the motions were taken under advisement. The Court now rules.

---

[1] The Clerk's Office will be directed to correct the docket to reflect that the motions at Docs. 8, 9, 10, and 13 should be divided into three parts: consolidation, appointment of lead plaintiff, and appointment of lead counsel. These motions have all been granted as to the consolidation portion of the motions (Doc. 19), but have not been resolved, until now, as to the appointing lead plaintiff and appointing lead counsel portion of those motions.

**SUMMARY**

This action is styled as a securities litigation class action on behalf of persons who purchased the securities of Defendant AudioEye, Inc., from May 5, 2014 to April 1, 2015 and suffered financial losses derived from violations of the Securities Exchange Act of 1934, specifically Section 10(b) and Rule 10b-5. Primarily investors claim that during this period of time they purchased common stock at artificially inflated prices.

Defendant AudioEye, incorporated in Delaware but doing business in Tucson, AZ, is the creator of patented audio browsing and automated publishing and accessibility technology platforms that create voice-driven technologies to enhance the mobility, usability, and accessibility of Internet-based content in the United States. The company develops patented, Internet content publication and distribution software that enables conversion of any media into accessible formats, and allows for real-time distribution on any Internet-connected device. It serves "…private- and public-sector…" customers, such as corporate publishers; consumer Websites; federal, state, and local governments and agencies; and mobile advertisers.

Defendant Bradley is the CEO and Defendant O'Donnell is the CFO. The company is registered with the Commission and files 10-Ks and 10-Qs with the SEC. AudioEye trades in the OTCQB[2] market under (AEYE). The CFO

---

[2] The OTCQB Venture Marketplace is for entrepreneurial and development stage U.S. and international companies. To be eligible, companies must be current in their reporting and undergo an annual verification and management certification process. These standards are intended to provide a strong baseline of transparency, as well as the technology and regulation to improve the information and trading experience for investors. One requirement for listing is that companies are current in their reporting to a U.S. regulator or are listed on a qualified international stock exchange, including audited financials in

O'Donnell has not been served or otherwise entered an appearance in this action.

On April 1, 2015, AudioEye announced that its previously issued financial statements for the quarters ended March 31, June 30, and September 30, 2014, would be restated due to improper accounting. Furthermore, AudioEye stated that its preliminary earnings release issued by the Company on January 12, 2015, relating to the quarter and year ended December 31, 2014, should no longer be relied upon. Upon the release of this news, the Company's shares declined approximately 25%, or $.11 per share, to close on April 1, 2015 at $.305 per share.

The Complaint alleges that, throughout the Class Period, defendants failed to disclose material adverse facts about the Company's financial well-being. Specifically, defendants failed to disclose or indicate the following: (1) that the Company improperly accounted for all revenue from non-cash exchanges of a license of the Company for services of the Company's customer; (2) that the Company lacked adequate internal and financial controls; and (3) that, as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times.

**PROCEDURAL BACKGROUND**

Two similarly styled complaints were filed nearly simultaneously, one in Tucson and one in Phoenix, in April 2015. The parties immediately filed competing motions to consolidate, appoint lead plaintiff and lead counsel. The Court granted the motions to consolidate on July 1, 2015 (Doc. 19) under CV-15-163-TUC-DCB but deferred ruling on appointment of

---

compliance with GAAP with no questions about being a going concern.

leads until after oral argument. The Court now rules on those portions of the pending motions.

**STANDARD OF REVIEW**

**A.  Lead Plaintiff**

The selection of the lead plaintiff is governed by the Private Securities Litigation Reform Act of 1995 (PSLRA). The PSLRA provides that

> [T]he court shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of class members (hereafter ... referred to as the 'most adequate plaintiff') ...

15 U.S.C. § 78u-4(a)(3)(B)(I)

In selecting the lead plaintiff,

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that -
>
> (aa) has either filed the complaint or made a motion [for designation as lead plaintiff];
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Federal Rule 23 generally requires that,

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative class are typical of the claims and defenses of the class, and (4) the representatives of the parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). In the context of determining the appropriate lead plaintiffs under the PSLRA, the requirements of typicality and adequacy of representation are the crucial factors. *See Armour v. Network*

4

*Associates, Inc.,* 171 F.Supp.2d 1044, 1049 (N.D.Cal. 2001)(citation omitted).

> However, the presumption may be rebutted
>
> [O]nly upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff -
> (aa) will not fairly and adequately protect the interests of the class; or
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

In establishing a criteria to determine which plaintiff or plaintiffs is most capable of adequately representing the interests of class members, the PSLRA provides that the financial stake in the outcome of the litigation is reasonably representative of the ability of a party or parties to function as lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). This comports with the overall focus of the PSLRA to place securities litigation in the hands of investors and not lawyers. *See* id., citing Statement of Managers-The "Private Securities Reform Act of 1995," H.R. Conf. Report No. 104-369, 104th Cong. 1st Ses. (1995), *reprinted in* U.S.C.C.A.N. 730 ("The legislative history of the PSLRA reveals that the above provisions were motivated by Congressional concerns about the prevalence of 'lawyer-driven' securities class actions."). It was hoped that including a presumption in favor of the largest stakeholder would give preference to institutional investors which would be in a better position to manage the litigation and to limit the influence of lawyers. *See id.; see also In re Donnkenny Inc. Securities Litigation,* 171 F.R.D. 156, 157-58 (S.D.N.Y.1997)(noting that Congress included the presumption in favor of the largest financial

stakeholder to give preference to institutional investors and limit influence of lawyers creating the class).

The Reform Act also requires that the lead plaintiff "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C.A. § 78u-4(a)(3)(B)(iii)(I)(cc) (West 1997). At the lead plaintiff selection stage, all that is required is a "preliminary showing" that the lead plaintiff's claims are typical and adequate. *Wenderhold v. Cylink Corp.,* 188 F.R.D. 577, 587 (N.D. Cal. 1999).

**B.  Lead Counsel**

The PSLRA provides that, "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). This requires some deference to the lead plaintiff's choice of counsel. *See Armour,* 171 F.Supp. 2d at 1050. "The expectation is that the person or group with the largest financial stake can best prosecute the claims, and will best be able to select, negotiate with, and monitor class counsel." *Takeda v. Turbodyne Technologies, Inc.,* 67 F.Supp.2d 1129, 1132 (C.D.Cal.1999). However, since the lead plaintiff owes fiduciary duties to the class, it is appropriate for the Court to screen the selected counsel to ensure that this counsel is appropriate to represent the interests of the class. As Judge Jenkins stated in *Armour,* "it is reasonable to conclude that the PSLRA does not permit a court to substitute its judgment for that of the lead plaintiff regarding the selection of counsel so long as the representation arranged is reasonable and thus does not interfere with that plaintiff's presumed adequacy to represent the entire class." *Armour*, 171 F.Supp. 2d at 1055.

The lead counsel provision of the Reform Act states that the appointed plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C.A. § 78u-4(a)(3)(B)(v) (West 1997). The statute vests the initial selection with the plaintiff; the court's role is limited to approval of that choice. *See also Wenderhold,* 188 F.R.D. at 587 (taking more active role in selection of counsel when plaintiff was an individual investor with little litigation experience).

**DISCUSSION**

**A. Lead Counsel**

The court is satisfied that both movants have selected highly qualified, experienced counsel who will adequately represent the interests of the class, both as lead and liaison lead. The ultimate conclusion here rests with the selection of the lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).

**B. Lead Plaintiff**

After review and consideration of the applicable law and the arguments of counsel, the Court will grant Plaintiffs Globis' motion for appointment of lead plaintiffs. In doing so, the Court has seriously considered Plaintiffs Saczawa's and Gindi's arguments regarding typicality, adequacy and calculation of the financial stake.

**1. Financial Stake**

Pursuant to the PSLRA, a court should appoint as lead plaintiff the movant or group of movants that has demonstrated the "largest financial interest in the litigation" that also meets the typicality and adequacy prongs of Fed. R. Civ. P. 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii).

7

Plaintiffs Gindi and Saczawa have a combined stated financial interest of $57,237.60 compared to the Globis' stated financial stake of $78,904.00.

The Court found the following table and explanation helpful:

| | Movant | Class Period Purchasess | Total Purchase Expenditures | Shares Retained** | Retained Shares Losses*** | *Dura* LIFO Losses**** |
|---|---|---|---|---|---|---|
|  | Movants' Damages* in AudioEye, Inc. Class Period: May 5, 2014 to April 1, 2015 | | | | | |
| 1 | Globis | 649,300 | $386,895.58 | 185,000 | ($84,246.67) | ($18,500.00) |
| 2 | Glen Alvin Morgan | 97,100 | $68,088.20 | 48,100 | ($26,530.67) | ($4,805.00) |
| 3 | Matthew Stapen | 15,700 | $11,330.00 | 15,700 | ($8,106.79) | ($1,570.00) |
| 4 | Milberg Group | 143,154 | $95,792.94 | 75,754 | ($32,531.60) | ($6,838.10) |
|  | Ralph Saczawa | 73,154 | $51,675.74 | 15,754 | ($6,419.70) | ($1,375.40) |
|  | Sam Gindi***** | 70,000 | $44,117.20 | 60,000 | ($26,111.90) | ($5,462.70) |

*All figures and calculations are based on the transaction information included in each movant's June 15, 2015 motion papers, subject to adjustment discussed in the last note below.

**"Shares Retained" are shares that were purchased during the class period and held through the alleged corrective disclosure, when purchases and sales are matched on a last-in-first-out ("LIFO") basis. The only alleged corrective disclosure was on April 1, 2015, before the market open. Accordingly, shares that were sold on April 1, 2015 are counted as retained shares.

***The "Retained Shares" method measures losses on each share as the difference between (i) the purchase price and (ii) the greater of the actual sales price or the average closing price from the end of class period through the date of sale.

> ****The "*Dura*"[3] method measures losses from the alleged corrective disclosure. As such, the calculation is only applied to class period-purchased securities that were not sold prior to that disclosure. The damages on each share are the difference between (i) the lesser of the purchase price and the trading price immediately prior to the corrective disclosure (in this case, $0.41 on March 31, 2015), and (ii) the closing price immediately after the disclosure (in this case, $0.31 on April 1, 2015).
>
> *****Movant Gindi's transaction schedule, [Dkt. #8, Ex.B], reflects a sale of 35,000 shares at $0.30 per share on April 1, 2014. Because (i) April 1, 2014 is prior to the start of the Class Period, and (ii) AudioEye shares did not trade below $0.46 per share on April 1, 2014, *see infra*, Ex.B, this chart assumes that the entry was in error, and that the transaction was actually on April 1, 2015.

(Doc. 23, Ex. A at 2.)

Plaintiffs Saczawa/Gindi argue against the loss calculation under the "*Dura* loss" method because "the retained shares methodology already takes account of *Dura*." (Doc. 20 at 6.) Globus responds that the two methods differ materially. While both consider only gains and losses on shares retained through the corrective disclosure, the "retained shares" method calculates the difference between the purchase price and the PSLRA holding value, while the "*Dura* loss" method calculates the difference between the closing price immediately prior to the corrective disclosure and the closing price immediately thereafter. In *Dura*, the Supreme Court unequivocally stated that if "the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss." *Id*. at 342. Thus, the economic loss may arise only from the shares retained or sold "after the truth makes its way into

---

[3] *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336 (2005).

the marketplace." *Id.; see also Foster v. Maxwell Techs., Inc.*, 2013 WL 5780424, at *3 (S.D. Cal. 2013) ("The misrepresentation does not lead to a loss if the purchaser sells the shares before the truth is revealed.").

This Court will follow the Ninth Circuit cases that have held that, when calculating lead plaintiff movant's losses, only the retained shares (*i.e.*, shares bought during the class period and held through the alleged corrective disclosure) will be accounted for, and any loss or gain on pre-disclosure sales will be disregarded.

### 2. Typicality and Adequacy

During the Class Period, Globis purchased 649,300 shares of AudioEye stock, for which it spent a total of $386,896. (*See* Press Decl. Exs. 2, 3.) The damages on Globis' retained shares (*i.e.* shares that were purchased during the Class Period and held at the time of the alleged corrective disclosure) are $78,904. Globis is an institutional investor, which is precisely the kind of investor that Congress sought to encourage to assume a more prominent role in securities litigation with the enactment of the PSLRA's lead plaintiff provisions, as "[i]nstitutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake." *In re Cendant Corp. Litig.*, 264 F.3d 201, 264 (3d Cir. 2001) (quoting H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733); *see*, *e.g.*, *Vanamringe v. Royal Group Techs. Ltd.*, 237 F.R.D. 55, 57 (S.D.N.Y. 2006).

Plaintiffs Saczawa/Gindi argue that Globis should be disqualified because it was a "net seller" (*i.e.*, sold more AudioEye shares than it bought) during the Class Period. (Doc. 20 at 5.) However, the courts in

10

the Ninth Circuit and elsewhere have repeatedly held that a "net seller" can be a lead plaintiff or class representative, as long as it has a recoverable loss. *See In re BP p.l.c. Sec. Litig.*, 2013 WL 6388408, at *8-9 (S.D. Tex. 2013) (rejecting challenge to plaintiff's typicality due to its 'net seller' status); *In re UTStarcom, Inc. Sec. Litig.*, 2010 WL 1945737, at *6 (N.D. Cal. 2010); *Hodges v. Immersion Corp.*, 2009 WL 5125917, at *2 (N.D. Cal. 2009) ("[W]here a 'net seller' is a 'net loser,' the net seller has incurred a cognizable loss and is the presumptive lead plaintiff where its net losses exceed those of the other movants."); *Richardson v. TVIA, Inc.*, 2007 WL 1129344, at *3 (N.D. Cal. 2007) ("In cases involving net sellers who are also net losers . . . courts have held that a movant should have no trouble proving damages and, therefore, is qualified to serve as lead plaintiff.") (internal citations omitted).

Finally, Plaintiffs Saczawa/Gindi argue that Globis is atypical because its Class Period purchases included shares that were purchased through the exercise of warrants [4] acquired prior to the Class Period. (Doc. 20 at 8-10.). At this juncture and with no proof otherwise, the Court will accept the representation that damages alleged by Globis flow solely from the shares acquired on the open market in reliance on the publicly available information, the type of damages typical for each member of the purported class. *See e.g., Gordon v. Sonar Capital Mgmt. LLC*, 2014 WL 3900560, at *3 (S.D.N.Y. 2014) (holding that "the fact that

---

[4] A stock warrant is issued by the company itself and new shares are issued by the company for the transaction. When a stock warrant is exercised, the shares that fulfill the obligation are not received from another investor, but directly from the company.

[plaintiff] traded at prices outside the market range does not mean that he did not rely on the market's integrity"); *In re KIT Digital, Inc. Sec. Litig.*, 293 F.R.D. 441, 447-48 (S.D.N.Y. 2013) (allegations of plaintiff's "unique market position" and "ability. . . to move market by itself" based on plaintiff's relationship with a mutual fund insufficient to rebut typicality prong). This also satisfies expressed concerns over proof of the reliance prong of a fraud-on-the market theory of loss. *See Basic v. Levanon*, 485 U.S. 224, 249 (1988). Defendants may later show lack of reliance or loss causation as a matter of fact at summary judgment.

## CONCLUSION

In sum, the Court finds that Globis has the largest financial interest in the relief sought in this litigation and satisfies the PSLRA's (and Rule 23) adequacy and typicality requirements. The Court will appoint Globis as lead plaintiff and will approve its selection of lead and liaison counsel.

**Accordingly,**

**IT IS ORDERED** that the Clerk's Office is directed to correct the docket to reflect that the motions at Docs. 8, 9, 10, and 13 are divided into three parts: consolidation, appointment of lead plaintiff, and appointment of lead counsel. All consolidation motions were granted previously by the Court. (Doc. 19.)

**IT IS FURTHER ORDERED** that the motions for lead plaintiff and lead counsel (Doc. 9, 10) are withdrawn and denied as moot.

**IT IS FURTHER ORDERED** that the Plaintiffs Saczawa/Gindi's motion for appointment of lead plaintiff/counsel (Doc. 8) is **DENIED** and the

Plaintiffs Globis' motion for appointment of lead plaintiff/counsel (Doc. 13) is **GRANTED**.  Globis Capital Partners LP and Globis Overseas Fund Ltd. are appointed lead plaintiffs and their chosen counsel are appointed as lead attorneys in this action: Kirby McInerney LLP and Bonnett Fairbourn Friedman & Balint (liaison).

DATED this 31st day of July, 2015.

David C. Bury
United States District Judge