Ira M. Press (admitted *pro hac vice*)
KIRBY McINERNEY LLP
825 Third Avenue, 16th Floor
New York, NY 10022
Telephone: (212) 371-6600
Fax: (212) 751-2540
Email: ipress@kmllp.com

*Lead Counsel for Plaintiffs*

Andrew S. Friedman (AZ #: 005425)
BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.
2325 E. Camelback Rd. Ste. 300
Phoenix, AZ 85016
Telephone: (602) 274-1100
Fax: (602) 274-1199
Email: afriedman@bffb.com

*Liaison Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| *In re AudioEye, Inc. Sec. Litig.* | Case No: 4:15-cv-00163-DCB<br><br>**MOTION FOR FINAL APPROVAL OF THE SETTLEMENT, CLASS CERTIFICATION AND PLAN OF ALLOCATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 1

II.  THE COURT SHOULD GRANT FINAL APPROVAL OF THE
     SETTLEMENT .............................................................................................. 3

     A.   Applicable Standards for Final Approval of Class Action Settlements ....... 3

     B.   The Settlement is Fair, Reasonable and Adequate ....................................... 4

          1.   The Overall Strength of Lead Plaintiffs' Case, Including the Risk,
               Expense, Complexity and Likely Duration of Further Litigation,
               Supports Final Approval of the Settlement ........................................ 4

               a)   PSLRA Cases Have Significant Obstacles to Success ........... 5

                    (1)   The Risk of Establishing Scienter and Bad Faith ........... 6

                    (2)   The Risk of Proving Loss Causation and Damages ........ 6

               b)   Continued Litigation Would Be Risky and Expensive ........... 7

               c)   The Risk That the Class Would Not Be Able To Collect On
                    Any Judgment ....................................................................... 8

          2.   The Risks of Achieving Class Action Status and Maintaining That
               Status Throughout Trial Support Approval of the Settlement .......... 8

          3.   The Amount Offered to Settle the Action ......................................... 9

          4.   The Amount of Discovery Completed and the Stage of the
               Proceedings Support Approval of the Settlement ........................... 10

          5.   Experienced Counsel Concur that the Settlement, Which Was
               Negotiated in Good Faith and at Arm's-Length, Is Fair,
               Reasonable and Adequate .............................................................. 11

          6.   The Class Members' Reaction Supports Approval of the
               Settlement ...................................................................................... 12

III. THE PROPOSED SETTLEMENT CLASS MEETS THE REQUIREMENTS
     FOR CLASS CERTIFICATION UNDER RULE 23 ......................................... 13

IV.  THE PLAN OF ALLOCATION SHOULD BE APPROVED ............................. 14

V.    NOTICE TO THE SETTLEMENT CLASS COMPLIED WITH DUE
      PROCESS..................................................................................................15

VI.   CONCLUSION ........................................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Ahdoot v. Babolat VS N. Am., Inc.*,
    No. 13 Civ. 2823, 2015 WL 1540784 (C.D. Cal. Apr. 6, 2015) .................................... 4

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) .................................................................................... 13, 14

*In re Apollo Grp. Inc. Sec. Litig.*,
    No. 04 Civ. 2147, 2012 WL 1378677 (D. Ariz. Apr. 20, 2012) ................................. 12

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) ............................................................................... 9

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ...................................................................... 3, 14

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ....................................................................................... 15

*Ellis v. Naval Air Rework Facility*,
    87 F.R.D. 15 (N.D. Cal. Feb. 7, 1980) ............................................................... 11

*Evans v. Jeff D.*,
    475 U.S. 717 (1986) .......................................................................................... 3

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ............................................................ 3, 4, 12, 13

*In re Heritage Bond Litig.*,
    No. 02 ML 1475, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ......................... passim

*Hubbard v. BankAtlantic Bancorp, Inc.*,
    688 F.3d 713 (11th Cir. 2012) ............................................................................ 7

*In re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007) ............................................................... 11

*Jenson v. Fiserv Trust Co.*,
    256 F. App'x 924 (9th Cir. 2007) ........................................................................ 9

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ......................................................................... 3, 4

*In re Mego Fin. Corp. Sec. Litig.,*
   213 F.3d 454 (9th Cir. 2000) ................................................................. 3, 4

*In re MicroStrategy, Inc. Sec. Litig.,*
   148 F. Supp. 2d 654 (E.D. Va. 2001) ................................................. 14, 15

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,*
   221 F.R.D. 523 (C.D. Cal. 2004) ............................................................ 8

*In re Nissan Motor Corp. Antitrust Litig.,*
   552 F.2d 1088 (5th Cir. 1977) .............................................................. 16

*Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.,*
   688 F.2d 615 (9th Cir. 1982) .............................................................. 3, 5

*In re Omnivision Techs., Inc.,*
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................ 5, 9, 10

*In re Oracle Sec. Litig.,*
   No. 90 Civ. 0931, 1994 WL 502054 (N.D. Cal. June 18, 1994) ................. 14

*Peters v. Nat'l R.R. Passenger Corp.,*
   966 F.2d 1483 (D.C. Cir. 1992) ........................................................... 15

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,*
   148 F.3d 283 (3d Cir. 1998) ............................................................... 10

*Riker v. Gibbons,*
   No. 08 Civ. 115, 2010 WL 4366012 (D. Nev. Oct. 28, 2010) ............... 11, 15

*In re Scientific Atlanta, Inc. Sec. Litig.,*
   754 F. Supp. 2d 1339 (N.D. Ga. 2010) .................................................. 7

*In re Syncor ERISA Litig.,*
   516 F.3d 1095 (9th Cir. 2008) .............................................................. 8

*In re THQ, Inc., Sec. Litig.,*
   No. 00 Civ. 001783, 2002 WL 1832145 (C.D. Cal. Mar. 22, 2002) ........... 14

*Torrisi v. Tucson Elec. Power Co.,*
   8 F.3d 1370 (9th Cir. 1993) ............................................................... 3, 4

*Vizcaino v. U.S. Dist. Court for W. Dist. of Wash.,*
   173 F.3d 713 (9th Cir. 1999) ................................................................ 9

*Wal-Mart Stores, Inc. v. Dukes*,
   56 U.S. 338 (2011)......................................................................................... 9

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004) ....................................................................... 10

*In re Warner Commc'ns Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985), aff'd 798 F.2d 35 (2d Cir. 1986) ........... 7

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
   720 F. Supp. 1379 (D. Ariz. 1989) *aff'd sub nom. City of Seattle*, 955 F.2d 1268 (citing
   *Officers for Justice*, 688 F.2d at 625) ...................................................... 4, 6

*Yamner v. Boich*,
   No. 92 Civ. 20597, 1994 WL 514035 (N.D. Cal. Sept. 15, 1994) ................ 14

**Statutes and Regulations**

15 U.S.C. §78u-4 ............................................................................................ 5

Fed. R. Civ. P. 23 ............................................................................................ 1

Fed. R. Civ. P. 23(a)(1) – (4) ......................................................................... 13

Fed. R. Civ. P. 23(b)(3) .................................................................................. 13

Fed. R. Civ. P. 23(c)(1) ................................................................................... 9

Fed. R. Civ. P. 23(e) ...................................................................................... 15

**Other Authorities**

Cornerstone Research entitled "Securities Class Action Settlements: 2016 Review and
   Analysis".................................................................................................... 2

NERA Economic Consulting entitled "Recent Trends in Securities Class Action
   Litigation: 2016 Full-Year Review" ............................................................. 2

Lead Plaintiffs Globis Capital Partners, L.P. and Globis Overseas Fund Ltd. ("Lead Plaintiffs"), by and through their undersigned counsel, respectfully move this Court for the entry of an order: (i) granting final approval of the proposed Settlement[1] and Plan of Allocation, which the Court preliminary approved on January 23, 2017 (Dkt. No. 93); (ii) finally certifying the proposed Class for purposes of the Settlement; (iii) and finding that notice to the Settlement Class satisfied due process. This motion is accompanied by a separate motion asking that the Court award Lead Counsel's fees and reimburse its expenses if the Settlement is approved.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiffs hereby submit this memorandum in support of final approval of the settlement of this action.[2]   As set forth herein and in the Press Declaration, the Settlement[3] was reached after an extensive investigation conducted by Lead Counsel; drafting the Consolidated Amended Class Action Complaint for Violation of the Federal Securities Laws ("CAC" (Dkt. No. 41); researching and drafting an opposition to Defendants' motions to dismiss (Dkt. No. 75); researching and drafting mediation briefing; and engaging in arm's-length settlement negotiations under the supervision of a mediator. *See* Press Decl. ¶¶ 18-38, 43.

---

[1] Unless otherwise defined, capitalized terms herein have the same meaning as the Stipulation of Settlement dated December 13, 2016 (the "Stipulation"). Docket Entry ("Dkt.") No. 89-1.

[2] This memorandum focuses primarily upon the legal standards for approval of a class action settlement under Fed. R. Civ. P. 23(e). For a more complete factual recitation of the Litigation and Settlement, Lead Counsel respectfully refers the Court to the Declaration of Ira M. Press in Support of Motion for Final Approval of the Proposed Settlement, Class Certification and the Plan of Allocation, and Motion for an Award of Attorney's Fees and Reimbursement of Expenses ("Press Decl."), filed concurrently herewith.

[3] Defendants include AudioEye, Inc. ("AudioEye" or the "Company") Nathaniel Bradley and Edward O'Donnell.

In furtherance of the Settlement, Defendants have caused to be paid $1,525,000 in cash into an interest-bearing escrow account for the benefit of the Settlement Class, in exchange for the dismissal and full release of all claims brought against them. Defendants deny any wrongdoing or liability in all respects and admit nothing as part of the Settlement.

The merits of the Settlement are demonstrated by, *inter alia*: the significant recovery - $1,525,000 in cash, clearly a large percentage of the Class' maximum potential recovery. AudioEye's stock price declined $0.10 per share following the Class-Period-ending corrective disclosure. While expert opinions of the number of damaged shares will differ, clearly not all of the 77 million shares in AudioEye's float were acquired during the Class Period. In fact, Lead Plaintiffs' damage expert estimates that there were 26.5 million damaged shares acquired during the Class Period. Thus, the Settlement recovery clearly compares favorably to the percentage of damages recovered in recent settlements of other securities class actions[4]; the significant risk of continuing litigation; and the time and expense required to prosecute the case to a final judgment and through any ensuing appeals, the outcome of which is uncertain. Having attained a thorough understanding of the strengths and weaknesses of the Settlement Class' claims, Lead Plaintiffs and Lead Counsel are confident that the Settlement is fair, reasonable and provides an excellent recovery.

Lead Plaintiffs respectfully request that the Court grant final approval of the Settlement and the Plan of Allocation, finally certify the Settlement Class, and enter the

---

[4] According to a 2017 report by NERA Economic Consulting entitled "Recent Trends in Securities Class Action Litigation: 2016 Full-Year Review" ("NERA Report"), in securities class actions where estimated damages were less than $20 million, as they are here, the median recovery was only 18.4% of recognized losses. *See* Press Decl., Ex. G at 36, Figure 29. Further, according to a 2017 report by Cornerstone Research entitled "Securities Class Action Settlements: 2016 Review and Analysis" ("Cornerstone Report"), in securities class actions where estimated damages were less than $50 million, as they are here, the median recovery was only 7.3% of estimated damages. *See* Press Decl. Ex. F at 8, Figure 7.

proposed Order and Final Judgment for this Litigation as filed on December 16, 2016. Dkt. No. 89-1, at Exhibit ("Ex.") B.

## II.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

### A.    Applicable Standards for Final Approval of Class Action Settlements

In deciding whether to approve a proposed settlement pursuant to Federal Rule of Civil Procedure 23(e), the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)[5]; *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). There is no prescribed settlement approval procedure to be followed in this Circuit. Rather, it is within the "sound discretion of the district courts to appraise the reasonableness of particular class-action settlements on a case-by-case basis." *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998). Ultimately, "[a] settlement should be approved if it is 'fundamentally fair, adequate and reasonable.'" *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000); *see also Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982). Indeed, in making its assessment:

> the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Hanlon*, 150 F.3d at 1027 (quoting *Officers for Justice*, 688 F.2d at 625).

Consequently, a settlement hearing is "not to be turned into a trial or rehearsal for trial on the merits," nor should the proposed settlement "be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Officers*

---

[5] Unless otherwise indicated, all internal citations and quotations are omitted.

MOTION FOR FINAL APPROVAL OF THE SETTLEMENT, CLASS CERTIFICATION, AND PLAN OF ALLOCATION; MEM. OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

3

*for Justice*, 688 F.2d at 625. To the contrary, "[t]he involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery had taken place create a presumption that the agreement is fair." *Ahdoot v. Babolat VS N. Am., Inc.*, No. 13 Civ. 2823, 2015 WL 1540784, at *6 (C.D. Cal. Apr. 6, 2015). The Settlement herein was reached only after hard-fought litigation between experienced counsel on both sides, and it is the product of arm's-length negotiations. Under such circumstances, Lead Plaintiffs respectfully submit that the Settlement should be afforded the presumption of fairness and that final approval should be granted.

### B.   The Settlement is Fair, Reasonable and Adequate

To determine whether a proposed settlement is fair, reasonable, and adequate, a court may consider balancing "some or all" of the following factors: (1) the strength of the plaintiffs' case, including the risk, expense, complexity, and likely duration of further litigation; (2) the risk of maintaining class action status through trial; (3) the amount offered in settlement; (4) the extent of discovery completed and the stage of the proceedings; (5) the experience and views of counsel; (6) the presence of a governmental participant; and (7) the reaction of the class members to the proposed settlement. *Linney*, 151 F.3d at 1242; *Hanlon*, 150 F.3d at 1026; *Torrisi*, 8 F.3d at 1375. This list is not exclusive and different factors may predominate in different factual contexts. *Torrisi*, 8 F.3d at 1376. Lead Plaintiffs recognize that these factors should be thoroughly explored where, as here, a settlement is reached prior to formal class certification. *Mego*, 213 F.3d at 458. As set forth below, an analysis of each of these factors demonstrates that the Settlement is fair, adequate, and reasonable.

### 1.   The Overall Strength of Lead Plaintiffs' Case, Including the Risk, Expense, Complexity and Likely Duration of Further Litigation, Supports Final Approval of the Settlement

In considering the strength of Lead Plaintiffs' case, the assessment is not intended to involve any ultimate conclusions regarding the contested issues of fact and law that underlie the merits of the litigation. *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720

F. Supp. 1379, 1388 (D. Ariz. 1989) *aff'd sub nom. City of Seattle*, 955 F.2d 1268 (citing *Officers for Justice*, 688 F.2d at 625). Lead Counsel, who have significant experience litigating and resolving complex securities class actions, carefully evaluated the merits of this case, in light of all of the risks and potential weaknesses, before Lead Plaintiffs entered into the Settlement.  Lead Counsel conducted a thorough investigation of the claims in this Litigation, and consulted with a forensic accountant to understand the accounting issues, and a damages expert to determine the statistical significance of the alleged disclosures, estimate damages, and formulate the Plan of Allocation.   Press Decl., ¶¶ 18, 43, 45, 48-50, 54-55; §II.B.4, *infra*.

While Lead Plaintiffs and Lead Counsel believe that the case is strong based on the substantial research and investigation conducted, they are cognizant of the substantial risk posed to the Settlement Class in continuing this Litigation, namely, that the case might not be certified, or that the Litigation might succumb at the motion to dismiss or summary judgment stage to attacks regarding, *inter alia*, liability or damages. *See In re Heritage Bond Litig.*, No. 02 ML 1475, 2005 WL 1594403, at *7 (C.D. Cal. June 10, 2005) ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced"); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008).

### a)    PSLRA Cases Have Significant Obstacles to Success

A heightened level of risk existed in this Litigation because the claims are subject to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4, which makes it more difficult for investors to successfully prosecute securities actions. The §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") claims in this Litigation were brought on the theory that while Defendants repeatedly assured investors that the Company complied with GAAP in recognizing the revenues from the nonmonetary licensing transactions, Defendants artificially inflated the Company's stock price by overstating the Company's revenues by more than 3,000%.  Press Decl., ¶¶ 19-28.   To succeed on the §10(b) claim, Lead Plaintiffs would have to prove that Defendants knowingly, or recklessly, issued materially false statements regarding the

MOTION FOR FINAL APPROVAL OF THE SETTLEMENT, CLASS CERTIFICATION, AND PLAN OF ALLOCATION; MEM. OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

5

basis for the purported revenues associated with the nonmonetary license transactions, and that Class Members relied upon Defendants' misconduct, and were damaged when the truth was revealed. *Id.* at ¶¶ 57-58. Each element of the claim has been hotly contested or would likely be contested during the Litigation.

### (1)    The Risk of Establishing Scienter and Bad Faith

Obtaining a favorable jury finding on the element of Defendants' mental state is hardly a foregone conclusion. Indeed, "[t]he legal requirements associated with proof of this mental state are exceedingly stringent and laden with peril." *Wash. Pub.*, 720 F. Supp. at 1388. Lead Plaintiffs would have to demonstrate that Defendants' improper classification of its revenues was the product of recklessness or knowledge that investors could be deceived.

While Lead Plaintiffs certainly believe that their arguments and evidence support the §10(b) claims, proving the claim at trial would be by no means guaranteed – and would only be an issue after surviving Defendants' motions to dismiss and Defendants' subsequent motion for summary judgment. *See Heritage Bond*, 2005 WL 1594403, at *7. The Court has not yet ruled that the CAC adequately pled that Defendants acted with scienter, and Lead Counsel is aware of the challenges of actually proving it at trial. Indeed, Defendants have steadfastly insisted, *inter alia*, that the Company's recognition of revenue from its non-monetary licensing transactions was vetted by outside professionals, *i.e.*, the Company's auditors and another unnamed outside accounting firm, upon whom Defendants purportedly in good faith relied. *See* Dkt. No. 65-1 at 12-13. It is plausible that a jury could believe Defendants.

### (2)    The Risk of Proving Loss Causation and Damages

Proving that the misstatements caused a significant loss for investors, and that the decline in AudioEye's stock was not the result of unrelated factors would require complicated expert testimony and use of methodologies that are debated among economists. Press Decl., ¶¶ 57-58, 73. Defendants would have presented their own expert testimony to demonstrate that a significant portion of the stock drop following the corrective disclosure was attributable to matters unrelated to the misrepresentations. *Id.*

MOTION FOR FINAL APPROVAL OF THE SETTLEMENT, CLASS CERTIFICATION, AND PLAN OF ALLOCATION; MEM. OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

6

This would create a "'battle of experts,' [in which] it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions." *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985), aff'd 798 F.2d 35 (2d Cir. 1986). As such, vigorous challenges to loss causation and damages pose a significant risk at summary judgment, trial, and on appeal.  *See Hubbard v. BankAtlantic Bancorp, Inc*., 688 F.3d 713, 716 (11th Cir. 2012) (jury verdict in §10(b) action reversed due to failure to prove loss causation); *In re Scientific Atlanta, Inc. Sec. Litig.*, 754 F. Supp. 2d 1339, 1379-80 (N.D. Ga. 2010) (granting motion for summary judgment on loss causation grounds for failure to disentangle the fraud-related and non-fraud-related portions of the stock decline).

### b)      Continued Litigation Would Be Risky and Expensive

Regardless of the ultimate outcome, there is no question that further litigation would be expensive and complex. The claims at the heart of this case involved allegations of improper recognition of revenue from its non-monetary licensing transactions and improper classification of revenues and expenses. Press Decl., ¶¶ 18-28. For class certification, Lead Plaintiffs (and Defendants) would have had to procure an expert's declaration on the issue of market efficiency. In addition to full motion briefing, documents would have been produced and expert depositions would have been taken.

With respect to discovery, Lead Counsel would anticipate, given the complexities of the issues in this Litigation, reviewing thousands of additional documents and taking numerous depositions of Defendants, AudioEye employees, as well as employees of the counter-parties to AudioEye's non-monetary licensing transactions. Following the close of merits discovery, the Parties would exchange expert reports and engage in expert discovery.   This process would require retention of costly experts on, *inter alia*, accounting and damage issues.  Consequently, as explained here and in §II.B.1.a, *supra*, expert discovery and trial preparation would be very expensive and complex. *See Heritage Bond*, 2005 WL 1594403, at *6 (noting that class actions have a well- deserved reputation as being the most complex).  Accordingly, the likely duration and expense of

MOTION FOR FINAL APPROVAL OF THE SETTLEMENT, CLASS CERTIFICATION, AND PLAN OF ALLOCATION; MEM. OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

7

further litigation supports a finding that the Settlement is fair, reasonable, and adequate. Even if a class were certified and the CAC survived Defendants' motions to dismiss and likely motion for summary judgment, continued prosecution of the Litigation would be complex, expensive, and lengthy with a more favorable outcome highly uncertain. Thus, the present value of a certain recovery at this time, as opposed to the mere chance for a greater one down the road, supports approval of a settlement that eliminates the expense and delay of continued litigation, and the risk that the Settlement Class receives no recovery.

At this point, approximately two years into the Litigation, Lead Plaintiffs are aware of the strengths and weakness of this case. Therefore, despite the perceived strength of Lead Plaintiffs' case, the risk, expense, complexity, and likely duration of further litigation clearly support approval of the Settlement. *See In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.").

### c) The Risk That the Class Would Not Be Able To Collect On Any Judgment

Lead Plaintiffs faced the additional risk of not being able to collect on a judgment in the event that the Class were to prevail through trial and appeals.  AudioEye's most recent balance sheet lists less than $1.5 million in cash and cash equivalents.  Press Decl., ¶ 60. Moreover, the primary asset being used to fund the Settlement is a liability insurance policy that is likely to be substantially, if not completely, depleted paying litigation costs if this Litigation would proceed through trial and appeal(s).  *Id.*

### 2. The Risks of Achieving Class Action Status and Maintaining That Status Throughout Trial Support Approval of the Settlement

The Settlement Class has been preliminarily certified for settlement purposes only. Dkt. No. 93. If not for this Settlement, Defendants likely would have strongly contested any motion for class certification and, if certified, would have sought every

MOTION FOR FINAL APPROVAL OF THE SETTLEMENT, CLASS CERTIFICATION, AND PLAN OF ALLOCATION; MEM. OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

8

opportunity to have the class decertified. *See Omnivision*, 559 F. Supp. 2d at 1041 (noting that even if a class is certified, "there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class").[6]   In addition, even if the Court certified this Litigation as a class action, the Court may re-assess its decision at any time prior to judgment.  *See Heritage Bond*, 2005 WL 1594403, at *10 (addressing the possibility of decertification or modification of a class).  Thus, the Settlement avoids any uncertainty with respect to this issue.

### 3.       The Amount Offered to Settle the Action

The Settlement value, totaling $1,525,000 in cash, plus interest, constitutes a large percentage, and perhaps a majority, of the Class' estimated damages (*see* Section I, *supra*), and provides an extraordinary recovery under the circumstances. Press Decl., ¶ 45. Indeed, settlements valued at a similar or much lower percentage of possible damages are routinely approved. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 241 (3d Cir. 2001) (noting that typical recoveries in securities class actions range from 1.6% to 14% of total losses); *Omnivision*, 559 F. Supp. 2d at 1042 (approving settlement amount of 9% of maximum potential damages).

When compared to other recent securities class action settlements, the Settlement is clearly within the range of reasonableness.  According to the NERA Report, in 2016, the "median of settlement value as a percentage of [ ] investor losses" was 18.4% for cases, such as this, with investor losses less than $20 million.  *See* Press Decl., Ex. G at 36, Figure 29.  Additionally, the Cornerstone Report reveals that in 2016, in securities class actions where estimated damages were less than $50 million, as they are here, the median recovery was only 7.3% of estimated damages.  *See* Press Decl., Ex. F at 8,

---

[6] Defendants could petition for an immediate interlocutory appeal pursuant to Fed. R. Civ. P. 23(f). *See Jenson v. Fiserv Trust Co.*, 256 F. App'x 924 (9th Cir. 2007). Fed. R. Civ. P. 23(c)(1) expressly provides that a class certification order may be "altered or amended" before final judgment. *See, e.g., Vizcaino v. U.S. Dist. Court for W. Dist. of Wash.*, 173 F.3d 713, 721 (9th Cir. 1999). Thus, maintaining certification is an expensive and risky enterprise. *E.g., Wal-Mart Stores, Inc. v. Dukes*, 56 U.S. 338 (2011) (reversing certification order obtained in 2004 and affirmed by a Ninth Circuit panel in 2007 and en banc in 2009).

MOTION FOR FINAL APPROVAL OF THE SETTLEMENT, CLASS CERTIFICATION, AND PLAN OF ALLOCATION; MEM. OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

9

Figure 7.   Accordingly, the $1,525,000 Settlement here, which possibly represents a majority of the estimated class-wide damages, is a truly remarkable result.[7]

Moreover, even if the Class were to prevail at trial on liability, if a jury were to credit Defendants' damages and loss causation experts over Lead Plaintiffs' experts, in whole or in part, with respect to whether a significant portion of the share price decline was causally related to Defendants' alleged misrepresentations, damages could substantially be reduced or eliminated. *See, e.g., Heritage Bond*, 2005 WL 1594403, at *7 (noting instances where a settlement was rejected by a court only to have the ultimate recovery generated by continued litigation be less than the proposed settlement).

When compared with the "present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing," the proposed Settlement is even more valuable. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004). Where "the trial of this class action would be a long, arduous process requiring great expenditures of time and money on behalf of both the parties and the court," the recovery of a substantial sum certain today, weighs in favor of the Settlement. *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 318 (3d Cir. 1998); *Omnivision*, 559 F. Supp. 2d at 1042 ("[T]he Settlement, which offers an immediate and certain award for a large number of potential class members, appears a much better option").

### 4.   The Amount of Discovery Completed and the Stage of the Proceedings Support Approval of the Settlement

Lead Plaintiffs have sufficient information to evaluate the prospects for this case and assess the adequacy of the Settlement.  By the time the Settlement was reached, Lead Counsel had, *inter alia*: (1) reviewed and analyzed AudioEye's Class Period and pre-Class Period SEC filings, press releases, conference call transcripts and other public statements; (2) consulted with a forensic accountant to understand the standards and protocols for recognizing revenue from non-monetary transactions; (3) collected and

---

[7] In the likely event that fewer than 100% of the Settlement Class Members submit claims to share in the Settlement recovery, those Settlement Class Members who file timely and valid claims will receive even greater pro rata recoveries.

reviewed a comprehensive compilation of analyst reports and news reports on AudioEye; (4) reviewed and analyzed AudioEye stock trading data; (5) consulted with damages experts regarding disclosure dates and damages; (6) drafted the highly-detailed CAC to comply with all applicable pleading standards; (7) drafted mediation briefing; (8) drafted an opposition to Defendants' motions to dismiss; and (9) participated in arm's-length negotiations with defense counsel, including a full-day mediation, with the assistance of a well-respected mediator. Press Decl., ¶¶ 18, 31-33, 36-38, 43, 67.

Accordingly, Lead Plaintiffs and Lead Counsel were in an excellent position to evaluate the strengths and weaknesses of the Litigation and the substantial risks of continued litigation, and to conclude that the Settlement is in the best interests of the Settlement Class. With sufficient information to properly evaluate the Litigation, Lead Counsel settled this Litigation on terms favorable to the Settlement Class without the substantial additional expense, risk, and uncertainty of continued litigation. This factor weighs in favor of this Court's final approval of the Settlement.

### 5. Experienced Counsel Concur that the Settlement, Which Was Negotiated in Good Faith and at Arm's-Length, Is Fair, Reasonable and Adequate

This case has been litigated by experienced and well-respected counsel on both sides, all of whom specialize in securities litigation. Press Decl., ¶¶ 68, 70; Press Decl., Ex. D (Lead Counsel's firm resume). "[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight." *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. Feb. 7, 1980); *see Riker v. Gibbons*, No. 08 Civ. 115, 2010 WL 4366012, at *2 (D. Nev. Oct. 28, 2010) ("An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining."). Moreover, settlement negotiations occurred before a respected neutral mediator, who has a securities litigation background, Robert A. Meyer, Esq., which further supports the fact that the Settlement was the product of arm's-length negotiations and hard-fought litigation. *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007). The Parties engaged in a full-day of formal mediation and while the Parties were unable to reach a

settlement at that time, following the mediation, the mediator made a mediator's proposal for a settlement of $1.525 million, which the Parties subsequently accepted. Press Decl. ¶ 38.  The negotiations were in good faith, at arm's-length, and in no way collusive.  Press Decl. ¶¶ 8, 41.

After the settlement-in-principle was reached, the Parties engaged in further negotiations over the details of the Settlement. Press Decl., ¶ 40. Only after weeks of additional negotiations, and substantial effort in drafting the Settlement documentation, did the Parties finally agree to all of the terms of the Settlement reflected in the Stipulation. *Id.* That the Litigation was hard-fought at every stage by experienced counsel strongly weighs in favor of a finding that the Settlement is fair and reasonable and should be approved.

### 6. The Class Members' Reaction Supports Approval of the Settlement

Pursuant to the Court's Order, dated January 23, 2017, (the "Preliminary Approval Order," Dkt. No. 93), 822 Postcard Notices were mailed to potential Class Members, and Summary Notices were published.  Press Decl., Ex. A (Affidavit of Amanda Horn Regarding (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; (C) Establishment of the Telephone Hotline; (D) Establishment of the Settlement Website; (E) Report on Requests for Exclusion Received to Date; and (F) Report on Objection(s) Received to Date) ("Horn Aff."), at ¶ 11.  While the deadline to request exclusion from the Settlement Class or to object to the Settlement, the Plan of Allocation and the application for attorneys' fees and expenses – April 7, 2017 and April 17, 2017, respectively) – has yet to pass, the reaction to date has been universally favorable.  As of March 29, 2017, no objections to any aspect of the Settlement or requests for exclusion from the Settlement have been received.  Press Decl., ¶ 82; Horn Aff. ¶ 16.  "[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness." *Hanlon*, 150 F.3d at 1027; *In re Apollo Grp. Inc. Sec. Litig.*, No. 04 Civ. 2147, 2012 WL 1378677, at *3 (D. Ariz. Apr. 20, 2012) ("There have been no

MOTION FOR FINAL APPROVAL OF THE SETTLEMENT, CLASS CERTIFICATION, AND PLAN OF ALLOCATION; MEM. OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

12

objections from Class Members…which itself is compelling evidence that the Proposed Settlement is fair, just, reasonable, and adequate."). Thus, all the factors typically considered in this Circuit support a finding that the Settlement is fair, reasonable and adequate and warrants final approval.

## III.   THE PROPOSED SETTLEMENT CLASS MEETS THE REQUIREMENTS FOR CLASS CERTIFICATION UNDER RULE 23

By its Preliminary Approval Order, the Court preliminarily certified the Settlement Class, for purposes of settlement only. *See* Dkt. No. 93 at ¶ 3. Lead Plaintiffs now seek final certification of the Settlement Class, consisting of all Persons who purchased or otherwise acquired any common stock of AudioEye during the period from May 14, 2014 through and including April 1, 2015, and who were allegedly damaged thereby.[8] Nothing has changed to cast doubt on the propriety of the Court's preliminary certification of the Settlement Class.

In order for a settlement class to be certified, the requirements of Rule 23 must generally be satisfied.[9] *Hanlon*, 150 F.3d at 1019-20 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997)). Trial manageability, however, is not a factor to consider when deciding whether to certify a settlement class, because the idea is that

---

[8] Excluded from the Settlement Class are Defendants, the officers and directors of AudioEye during the Class Period, members of their immediate families and their legal representatives, heirs, successors, or assigns, any entity in which Defendants have or had a controlling interest, and any persons who separately file an action against one or more of Defendants, based in whole or in part on any claim arising out of or relating to any of the alleged acts, omissions, misrepresentations, facts, events, matters, transactions, or occurrences referred to in the Litigation or otherwise alleged, asserted, or contended in the Litigation. Also excluded from the Settlement Class are those Persons who timely and validly request exclusion from the Settlement Class pursuant to the Notice.

[9] Fed. R. Civ. P. 23(a)(1) – (4) provides the following prerequisites that must be satisfied before a class can be certified: (1) the class must be so numerous that joinder of all members is impracticable, (2) questions of law or fact that are common to the class, (3) the claims of the representative parties are typical of the claims of the class, (4) the representative parties will fairly and adequately protect the interests of the class. In addition, common questions of law or fact must predominate over questions that affect only individual members of the class, and a class action must be found to be superior to other available methods of adjudication. Fed. R. Civ. P. 23(b)(3).

---

MOTION FOR FINAL APPROVAL OF THE SETTLEMENT, CLASS CERTIFICATION, AND PLAN OF ALLOCATION; MEM. OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

13

there will not be a trial. *Amchem*, 521 U.S. at 620. Moreover, "the law in the Ninth Circuit is very well established that the requirements of Rule 23 should be liberally construed in favor of class action cases brought under the federal securities laws." *In re THQ, Inc., Sec. Litig.*, No. 00 Civ. 001783, 2002 WL 1832145, at * 2 (C.D. Cal. Mar. 22, 2002) (internal citations omitted); *see also Yamner v. Boich*, No. 92 Civ. 20597, 1994 WL 514035, at * 2 (N.D. Cal. Sept. 15, 1994) (the "Ninth Circuit favors a liberal use of class actions to enforce federal securities laws").

For the reasons detailed previously in Lead Plaintiffs' Unopposed Motion and Memorandum of Points and Authorities in Support of Preliminary Approval of Settlement, Preliminary Certification of Settlement Class, and Establishing Notice Procedures (Dkt. No. 89), and as set forth in this Court's Preliminary Approval Order (Dkt. No. 93), all of the requirements of Rule 23 are met and final certification of the Settlement Class for settlement purposes is appropriate here.

## IV.   THE PLAN OF ALLOCATION SHOULD BE APPROVED

In the Preliminary Approval Order, the Court preliminarily approved the mailed Notice and the Plan of Allocation. Dkt. No. 93 at ¶ 7. Lead Plaintiffs now request that the Court grant final approval of the Plan of Allocation, for the purpose of administering the Settlement. The proposed Plan of Allocation was fully described in the Long Form Notice made available to the Settlement Class and has a rational basis. *See* Horn Aff., ¶ 11 & Ex. B.  Here, each authorized claimant will receive a pro rata share of the Net Settlement Fund comprised of cash, plus interest, less Court-approved fees and expenses. Horn Aff., Ex. B at pp. 6-7; Press Decl., ¶¶ 49-50.

"Approval of a settlement, including a plan of allocation, rests in the sound discretion of the court." *Heritage Bond*, 2005 WL 1594403, at *11 (citing *Class Plaintiffs*, 955 F.2d at 1284). "To warrant approval, the plan of allocation must also meet the standards by which the . . . settlement was scrutinized – namely, it must be fair and adequate." *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 668 (E.D. Va. 2001) (citing *Class Plaintiffs*, 955 F.2d at 1284-85); *In re Oracle Sec. Litig.*, No. 90 Civ. 0931, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994). As noted in *MicroStrategy*,

MOTION FOR FINAL APPROVAL OF THE SETTLEMENT, CLASS CERTIFICATION, AND PLAN OF ALLOCATION; MEM. OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

14

"the plan . . . fairly treats class members by awarding a pro rata share to every Authorized Claimant, but also sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue."  148 F. Supp. 2d at 669.

The Plan allocates recovery consistent with the principles under which Class Members' recoveries would be determined in the event that the Class were to prevail at trial.  Specifically, the Plan looks to the stock price reaction to AudioEye's April 1, 2015 disclosure (that it anticipated restating reported earnings to erase all of the previously-reported revenues from the non-monetary licensing agreements) as the basis for the allocation.   For these reasons, Lead Counsel believes the Plan of Allocation fairly compensates Class Members and should be approved. *Id. See Riker*, 2010 WL 4366012, at *5 ("Class counsel has consistently consulted with experts throughout this litigation, and based on these consultations, has determined that the terms agreed upon in the settlement represent a fair, adequate, and reasonable settlement of plaintiffs' claims").

## V.     NOTICE TO THE SETTLEMENT CLASS COMPLIED WITH DUE PROCESS

Rule 23(e) provides that "notice of the proposed dismissal or compromise [of a class action] shall be given to all members of the class in such manner as the court directs."  Fed. R. Civ. P. 23(e). The notice's purpose is to "afford members of the class due process which, in the context of the [R]ule 23(b)(3) class action, guarantees them the opportunity to be excluded from the class action and not be bound by any subsequent judgment." *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974)). The Notice program utilized and carried out by JND Legal Administration ("JND"), a nationally-recognized claims administration firm, under Lead Counsel's supervision as set by the Preliminary Approval Order, easily meets this standard. *See* Horn Aff.

JND provided Postcard Notice via first-class mail to each potential member of the Settlement Class whose address was reasonably ascertainable. *Id.* at ¶¶ 2-11. JND also caused the Summary Notice to be published. *Id.* at ¶ 12 & Exs. C-D. The Postcard

MOTION FOR FINAL APPROVAL OF THE SETTLEMENT, CLASS CERTIFICATION, AND PLAN OF ALLOCATION; MEM. OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

15

Notice and the Summary Notice provided Class Members with the information that they needed to download the Long Form Notice (Horn Aff., ¶¶ 12, 14 & Exs. A, C) for free or request a copy to be provided by mail or email.  The Long Form Notice describes the Settlement terms, claims, releases, the process for objecting and opting out of the Settlement, instructions to make a claim, pertinent deadlines, and the time, date, and place of the Final Settlement Hearing. Horn Aff., Ex. B; Press Decl., ¶ 51. The Long Form Notice also provided a telephone number, website link, and contact information for Lead Counsel and JND. Horn Aff. ¶¶ 13-14 & Ex. B. These efforts to inform potential Class Members of the Settlement, and their rights and obligations associated therewith, are more than sufficient to satisfy due process. *See In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1104 (5th Cir. 1977) (notice must contain "an adequate description of the proceedings written in objective, neutral terms, that . . . may be understood by the average absentee class member").

## VI.    CONCLUSION

Based on the foregoing, Lead Plaintiffs respectfully request that the Court enter an order: (i) granting final approval of the proposed Settlement and Plan of Allocation; (ii) finally certifying the Settlement Class for purposes of the Settlement; (iii) and finding that notice to the Settlement Class satisfied due process.

Dated: April 3, 2017                    Respectfully Submitted,

**KIRBY McINERNEY LLP**

 */s/ Ira M. Press*
Ira M. Press (admitted *pro hac vice*)
ipress@kmllp.com
825 Third Avenue, 16th Floor
New York, NY 10022
Telephone: (212) 371-6600
Fax: (212) 751-2540

*Lead Counsel for Lead Plaintiffs and the Class*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**BONNETT, FAIRBOURN,
FRIEDMAN & BALINT, P.C.**
Andrew S. Friedman (AZ #: 005425)
2325 E. Camelback Rd. Ste. 300
Phoenix, AZ 85016
Telephone: (602) 274-1100
Fax: (602) 274-1199
Email:  afriedman@bffb.com

*Liaison Counsel for Lead Plaintiffs and the
Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 3, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail notice list, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice list.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

*/s/ Ira M. Press*