Ira M. Press (admitted *pro hac vice*)
KIRBY McINERNEY LLP
825 Third Avenue, 16th Floor
New York, NY 10022
Telephone: (212) 371-6600
Fax: (212) 751-2540
Email: ipress@kmllp.com

*Lead Counsel for Plaintiffs*

Andrew S. Friedman (AZ #: 005425)
BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.
2325 E. Camelback Rd. Ste. 300
Phoenix, AZ 85016
Telephone: (602) 274-1100
Fax: (602) 274-1199
Email:  afriedman@bffb.com

*Liaison Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| *In re AudioEye, Inc. Sec. Litig.* | Case No: 4:15-cv-00163-DCB<br><br>**MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................. 1

II.  HISTORY AND BACKGROUND OF THE ACTION .......................................... 3

    A.  Procedural History ........................................................................................ 3

    B.  Lead Plaintiffs' Investigations .................................................................... 5

III.  A REASONABLE PERCENTAGE OF THE "COMMON FUND" RECOVERED IS AN APPROPRIATE APPROACH TO AWARDING ATTORNEYS' FEES ... 5

    A.  The Common Fund Doctrine ........................................................................ 5

    B.  Standard for Approval of Attorneys' Fees in the Ninth Circuit.................... 6

    C.  Courts in the Ninth Circuit Often Hold Percentages Higher than 30% of the Common Fund to Be a Reasonable Fee ......................................................... 7

IV.  ALL RELEVANT FACTORS CONSIDERED, AN AWARD OF 33-1/3% OF THE SETTLEMENT FUND IS REASONABLE ................................................. 8

    A.  Lead Counsel Achieved an Excellent Result for the Settlement Class......... 8

    B.  Awards in Similar Cases ............................................................................. 9

    C.  The Risks of Litigation............................................................................... 11

    D.  The Skill Required and the Quality and Efficiency of the Work................ 12

    E.  The Contingent Nature of the Case and the Financial Burden Carried by Lead Counsel .............................................................................................. 13

    F.  The Reaction of the Settlement Class Supports the Requested Award....... 14

    G.  A Lodestar Cross-Check Shows the Fee Request Is Reasonable................ 14

V.  LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED ............................... 16

VI.  CONCLUSION ................................................................................................. 17

MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND REIMBURSEMENT OF EXPENSES; MEM. OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

i

# TABLE OF AUTHORITIES

**Cases**

*In re 2TheMart.com, Inc. Sec. Litig.*,
 No. 99 Civ. 1127 (C.D. Cal. July 8, 2002) .................................................................. 10

*In re Activision Sec. Litig.*,
 723 F. Supp. 1373 (N.D. Cal. 1989) .......................................................................... 9

*In re Animation Workers Antitrust Litig.*,
 No. 14 Civ. 4062, 2016 WL 6663005 (N.D. Cal. Nov. 11, 2016) ............................... 16

*Antonopulos v. N. Am. Thoroughbreds, Inc.*,
 No. 87 Civ. 0979, 1991 WL 427893 (S.D. Cal. May 6, 1991) ...................................... 7

*In re Apollo Grp. Inc. Sec. Litig.*,
 No. 04 Civ. 2147, 2012 WL 1378677 (D. Ariz. Apr. 20, 2012) ................................... 7

*Behrens v. Wometco Enters., Inc.*,
 118 F.R.D. 534 (S.D. Fla. 1988) ............................................................................... 12

*Boeing Co. v. Van Gemert*,
 444 U.S. 472 (1980) .............................................................................................. 5, 6

*Chem. Bank v. Seattle* (*In re Wash. Pub. Power Supply Sys. Sec. Litig.*),
 19 F.3d 1291 (9th Cir. 1994) ............................................................................. passim

*In re China Intelligent Lighting & Elec., Inc.*,
 No. 11 Civ. 2768, 2015 WL 12765018 (C.D. Cal. Mar. 9, 2015) ............................... 15

*In re Crazy Eddie Sec. Litig.*,
 824 F. Supp. 320 (E.D.N.Y. 1993) ............................................................................ 9

*Destefano v. Zynga, Inc.*,
 No. 12 Civ. 4007, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) .................................. 16

*Detroit v. Grinnell Corp.*,
 495 F.2d 448 (2d Cir. 1974), *abrogated by Goldberger v. Integrated Res., Inc.*,
 209 F.3d 43 (2d Cir. 2000) ...................................................................................... 11

*Elliot v. China Green Agriculture, Inc. et al.*,
 No. 10 Civ. 648 (D. Nev. Aug. 12, 2014) .............................................................. 8, 10

*In re En Pointe Techs., Inc. Sec. Litig.*,
 No. 01 Civ. 205 (S.D. Cal. Sept. 29, 2006) ............................................................... 10

*In re Equity Funding Corp. of Am. Sec. Litig.*,
   438 F. Supp. 1303 (C.D. Cal. 1977) ............................................................. 13

*Fischel v. Equitable Life Assurance Soc'y of United States*,
   307 F.3d 997 (9th Cir. 2002) ......................................................................... 14

*In re Galena Biopharma, Inc. Sec. Litig.*,
   No. 14 Civ. 367, 2016 WL 3457165 (D. Or. June 24, 2016) .................... 8, 10

*In re Gen. Instrument Sec. Litig.*,
   209 F. Supp. 2d 423 (E.D. Pa. 2001) ............................................................. 9

*Gudimetla v. Ambow Educ. Holding*,
   No. 12 Civ. 5062, 2015 WL 12752443 (C.D. Cal. Mar. 16, 2015) ............... 15

*Harris v. Marhoefer*,
   24 F.3d 16 (9th Cir. 1994) ............................................................................. 16

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ........................................................................................ 8

*In re Heritage Bond Litig.*,
   No. 02-ML-1475, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ............... 7, 8

*In re Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007) ........................................................ 14

*In re Interlink Elec., Inc. Sec. Litig.*,
   No. 05 Civ. 8133 (C.D. Cal. June 1, 2009) ................................................... 10

*Johnson v. Aljian*,
   No. 03 Civ. 5986 (C.D. Cal. Sept. 16, 2010) ............................................... 10

*Knight v. Red Door Salons, Inc.*,
   No. 08 Civ. 1520, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) .................... 12

*Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*,
   540 F.2d 102 (3 C 76) ................................................................................... 11

*In re Maxwell Tech. Inc. Sec. Litig.*,
   No. 13 Civ. 00580 (S.D. Cal. Feb. 16, 2015) ........................................... 7, 10

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) .......................................................................... 7

*In re Merix Corp. Sec. Litig.*,
   No. 04 Civ. 826 (D. Or. Jan. 3, 2011) ........................................................... 10

*In re Mikohn Gaming Corp. Sec. Litig.*,
   No. 05 Civ. 1410 (D. Nev. June 6, 2007) ...................................................... 10

*Missouri v. Jenkins*,
   491 U.S. 274 (1989) ................................................................................... 6, 15

*Ontiveros v. Zamora*,
   303 F.R.D. 356 (E.D. Cal. 2014) .................................................................. 16

*Patel v. Axesstel, Inc.*,
   No. 14 Civ. 1037, 2015 WL 6458073 (S.D. Cal. Oct. 23, 2015) ............... 8, 10

*Paul, Johnson, Alston, & Hunt v. Graulty*,
   886 F.2d 268 (9th Cir. 1989) ..................................................................... 6, 10

*In re Portal Software, Inc. Sec. Litig.*,
   No. 03 Civ. 5138, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ................. 15

*Ray v. Lundstrom*,
   No. 10 Civ. 199, 2012 WL 5458425 (D. Neb. Nov. 8, 2012) .......................... 9

*In re Rite Aid Corp. Sec. Litig.*,
   146 F. Supp. 2d 706 (E.D. Pa. 2001) ............................................................... 9

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3d Cir. 2005) .......................................................................... 14

*Rutti v. Lojack Corp. Inc.*,
   No. 06 Civ. 350, 2012 WL 3151077 (C.D. Cal. July 31, 2012) .................... 15

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
   904 F.2d 1301 (9th Cir. 1990) ......................................................................... 6

*Szymborski v. Ormat Tech., Inc.*,
   No. 10 Civ. 132, 2012 WL 4960098 (D. Nev. Oct. 16, 2012) ................... 8, 10

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   MDL No. 1827, 2013 WL 149692 (N.D. Cal. Jan. 14, 2013) ....................... 16

*In re Veritas Software Corp. Sec. Litig.*,
   No. 03 Civ. 283, 2005 WL 3096079 (N.D. Cal. Nov. 15, 2005) .................. 15

*Vincent v. Hughes Air West, Inc.*,
  557 F.2d 759 (9th Cir. 1977) ........................................................................ 5

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ............................................................... passim

*Waters v. Int'l Precious Metals Corp.*,
  190 F.3d 1291 (11th Cir. 1999) ................................................................... 9

**Statutes and Regulations**

15 U.S.C. § 78u-4(a)(6) ................................................................................. 6

Fed. R. Civ. P. 23 ........................................................................................... 1

**Other Authorities**

Richard Posner, *Economic Analysis of Law*, § 21.9, at 534-35 (3d ed. 1986)) ................ 13

Pursuant to Fed. R. Civ. P. 23, Court-appointed Lead Counsel for Lead Plaintiffs and the Class, Kirby McInerney LLP ("Lead Counsel" or "KM")[1] hereby moves this Court for an Order awarding: (1) attorneys' fees of 33-1/3% of the Settlement Fund; and (2) reimbursement of expenses incurred in prosecuting this Litigation in the amount of $26,250.47. This Motion is supported by (1) this Memorandum of Points and Authorities; and (2) the Declaration of Ira M. Press in Support of Motion for Final Approval of the Proposed Settlement, Class Certification and the Plan of Allocation, and Motion for an Award of Attorneys' Fees and Reimbursement of Expenses[2] ("Press Decl."), with exhibits attached thereto and filed herewith.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Through the efforts of Lead Counsel, an agreement was reached to settle this Litigation for $1,525,000 in cash (the "Settlement"). The Settlement recovers most of Lead Plaintiffs' best estimate of maximum Class Period damages and is an extraordinary result, particularly when viewed in light of the considerable risks posed by further litigation and the continued uncertainty of proving liability and damages, as well as collecting on any judgment. *See* Press Decl., ¶¶ 45, 57-60, 73-75, 78-80; Final Approval Memorandum[3] at pp. 4-9.

Lead Counsel seek an award of 33-1/3% of the Settlement and respectfully submits that the requested fee award is appropriate because of the significant recovery

---

[1] Unless otherwise defined, capitalized terms herein have the same meaning as set forth in the Stipulation of Settlement dated December 13, 2016 (the "Stipulation"). Docket Entry ("Dkt.") No. 89-1.

[2] This memorandum focuses primarily upon the legal and factual basis for approval of attorneys' fees and expenses. For a more complete factual recitation of the Litigation and Settlement than set forth herein, Lead Counsel respectfully refers the Court to the Press Declaration, filed concurrently herewith.

[3] "Final Approval Memorandum" refers to the Lead Plaintiffs' Motion for Final Approval of the Proposed Settlement, Class Certification and the Plan of Allocation and Incorporated Memorandum of Law in Support Thereof, filed concurrently herewith.

obtained through its vigorous prosecution of the Litigation, including, *inter alia*: a thorough investigation; consulting with a forensic accountant, a private investigator, and a damages expert; drafting a highly detailed Consolidated Amended Class Action Complaint ("CAC") (Dkt. No. 41); researching and drafting an opposition to Defendants' motions to dismiss (Dkt. No. 75); researching and drafting mediation briefing; and engaging in arm's-length settlement negotiations all under the supervision of an experienced third-party mediator.  *See* Press Decl., ¶¶ 18-38, 43; § II *infra*.

The reaction of the Settlement Class also strongly supports the requested fee. As of March 29, 2017, pursuant to the Court's Order dated January 23, 2017 (Dkt. No. 93), the Claims Administrator mailed 822 Postcard Notices to potential Class Members. *See* Press Decl., ¶¶ 81-82 & Ex. A thereto (Affidavit of Amanda Horn Regarding (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; (C) Establishment of the Telephone Hotline; (D) Establishment of the Settlement Website; (E) Report on Requests for Exclusion Received to Date; and (F) Report on Objection(s) Received to Date) ("Horn Aff.") at ¶¶ 2-11. The Postcard Notice specifically advised Class Members that Lead Counsel intended to apply to the Court for an award of attorneys' fees representing up to one third of the Settlement Fund and that Lead Counsel would seek expenses not to exceed $75,000.00. Horn Aff., at Ex. A.

The deadlines to request exclusion from the Settlement or to file an objection to the Settlement are April 7, 2017 and April 17, 2017, respectively. To date, not a single objection has been filed with respect to any aspect of the Settlement. Press Decl., ¶ 82; Horn Aff., ¶ 16. Additionally, no requests for exclusion have been received by the Claims Administrator as of March 29, 2017. Press Decl., ¶ 7; Horn Aff., ¶ 15. The fact that there have been no objections to Lead Counsel's attorneys' fee request or expense request demonstrates the reasonableness of Lead Counsel's fee request here.

MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND REIMBURSEMENT OF EXPENSES; MEM. OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

2

The fairness and reasonableness of Lead Counsel's fee and expense request is further confirmed when cross-checked with Lead Counsel's cumulative lodestar.[4] Lead Counsel spent over 1,122 hours of professional time, having a market value of approximately $768,704.50 in prosecuting the Litigation.  Press Decl, ¶ 83 and Exs. B-C; Friedman Decl.[5] at Exs. 1-2. Lead Counsel's fee request, which incorporates a *negative* lodestar multiplier of approximately 0.66, compensates Lead Counsel for this time and labor, as well as the substantial risks associated with litigating this case on a fully contingent basis.

For the reasons set forth below, Lead Counsel respectfully submit that the requested attorneys' fees and expenses are fair and reasonable under applicable legal standards, especially in light of the contingency risk undertaken, and should be awarded by the Court.

## II.    HISTORY AND BACKGROUND OF THE ACTION[6]

### A.    Procedural History

Following a disclosure on April 1, 2015 that AudioEye would have to restate previously-reported financial results in order to eliminate virtually all of the revenue that it previously reported during the Class Period, two class action lawsuits were filed against AudioEye and certain of its officers.  These actions were consolidated by the

---

[4] Lead Counsel's lodestar is comprised of the total hours worked by KM and the Court-appointed Liasion Counsel, Bonnett, Fairbourn, Friedman & Balint, P.C ("BFFB").  For purposes of this memorandum only, these firms are collectively referred to as "Lead Counsel."

[5] "Friedman Decl." refers to the Declaration of Andrew S. Friedman on behalf of BFFB in Support of Application for an Award of Attorneys' Fees and Reimbursement of Expenses, annexing as Exs. 1-3 thereto the lodestar report, expense report and firm resume, respectively, and attached as Exhibit E to the Press Declaration.

[6] The Press Declaration is an integral part of this submission.  The Court is respectfully referred to the Press Decl. for a more detailed description of the factual and procedural history of the Litigation as well as Lead Counsel's efforts during the prosecution and settlement of the Litigation. *E.g.,* Press Decl., ¶¶ 5-9, 13-43, 45, 54-62, 67, 71-80. For the Court's convenience, a short description of the foregoing is provided herein.

---

MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND REIMBURSEMENT OF EXPENSES; MEM. OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

3

Court on July 1, 2015 (Dkt. No. 19).  On or about June 15, 2015, several motions were filed by members of the proposed class for appointment of lead plaintiff and lead counsel pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"). Following briefing and a hearing, the Court issued an order on August 3, 2015 appointing Lead Plaintiffs and Lead Counsel.  Dkt. No. 35.

On November 30, 2015, following an extensive investigation, Lead Plaintiffs filed the operative complaint, the CAC (Dkt. No. 41) asserting claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") against Defendants.

On December 29, 2015, an Audioeye shareholder filed a motion to intervene as a representative plaintiff to allege violations of Arizona state law claims against Defendants that Lead Plaintiffs did not assert in the CAC.  Dkt. No 44.  Lead Plaintiffs and Defendants both filed their oppositions to the intervention motion on February 2, 2016.   Dkt. Nos. 57-58, respectively. On February 5, 2016, Defendants moved to dismiss the CAC (Dkt. Nos. 64-65) and Lead Plaintiffs filed their opposition on March 18, 2016 (Dkt. No. 75).

On April 11, 2016, the Court ruled on the motion to intervene. Dkt. No. 81. Specifically, the Court directed Lead Plaintiffs to file a new complaint, within 30 days, that includes Arizona state law.  The Court further denied the motion to add the intervenor as a named-Plaintiff.  *Id.*

On April 13, 2016, the parties filed a stipulation temporarily staying the proceeding until after voluntary mediation (Dkt. No. 82), which the Court granted the stay until June 30, 2016 (Dkt. No. 83).  The Court subsequently granted the parties another extension of the temporary stay of proceeding.  Dkt. No. 85.  On July 29, 2016, the parties notified the Court of a tentative agreement to settle the Litigation (Dkt. No. 86) and thereafter spent additional weeks negotiating the details of a formal settlement agreement and drafting the relevant settlement papers.  The settling Parties ultimately executed the Stipulation on December 13, 2016, and the Court preliminarily approved the proposed Settlement on January 23, 2017 (Dkt. No. 93).

MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND REIMBURSEMENT OF EXPENSES; MEM. OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

4

### B.     Lead Plaintiffs' Investigations

Lead Plaintiffs' counsel conducted a thorough investigation and analysis of the claims of the Settlement Class prior to the settling Parties' agreement to resolve the Litigation.  By the time the Settlement was reached, Lead Counsel had, *inter alia*: (1) reviewed and analyzed AudioEye's relevant SEC filings, press releases, conference call transcripts and other public statements; (2) consulted with a forensic accountant to understand the standards and protocols for recognizing revenue from non-monetary transactions; (3) engaged a private investigator in an attempt to obtain relevant information from former AudioEye employees and from customers of AudioEye; (4) reviewed numerous analyst reports and news reports on AudioEye; (5) reviewed and analyzed AudioEye stock trading data; (6) consulted with damages experts regarding damages; (7) drafted the highly-detailed CAC; (8) drafted mediation briefing; (9) drafted an opposition to Defendants' motions to dismiss; and (10) participated in arm's-length negotiations with defense counsel, including a full-day mediation, with the assistance of a well-respected mediator.  *See e.g.,* Press Decl., ¶¶ 5, 18, 31-33, 36-38, 43.

## III.   A REASONABLE PERCENTAGE OF THE "COMMON FUND" RECOVERED IS AN APPROPRIATE APPROACH TO AWARDING ATTORNEYS' FEES

### A.     The Common Fund Doctrine

It has long been recognized that a person who prosecutes a suit that results in the creation of a fund in which others have a common interest may obtain fees from that common fund. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"). The Ninth Circuit has specifically found that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *Chem. Bank v. Seattle* (In *re Wash. Pub. Power Supply Sys. Sec. Litig.*), 19 F.3d 1291, 1300 (9th Cir. 1994) ("*WPPSS*"). *See also Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977) ("a private plaintiff, or his attorney, whose efforts create, discover, increase or

MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND REIMBURSEMENT OF EXPENSES; MEM. OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

5

preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees"). The common fund doctrine is also designed to prevent the unjust enrichment of class members who benefit from a lawsuit without paying for it. *Boeing*, 444 U.S. at 478; *see also Paul, Johnson, Alston, & Hunt v. Graulty*, 886 F.2d. 268, 271 (9th Cir. 1989).

**B.      Standard for Approval of Attorneys' Fees in the Ninth Circuit**

It is well-settled in the Ninth Circuit that district courts have the discretion to apply either the percentage-of-recovery method or the lodestar method in determining attorneys' fees in a common fund case. *WPPSS*, 19 F.3d at 1295. In recent years, the percentage-of-recovery method has become the prevailing method for awarding fees in common fund cases in this Circuit and throughout the United States.[7] *See also Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) ("a reasonable fee under the common fund doctrine is calculated as a percentage of the recovery"). Nevertheless, in employing the percentage-of-recovery method, courts often perform a lodestar cross-check on the reasonableness of the requested fee. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (affirming use of percentage method to calculate attorneys' fees and application of lodestar method as cross-check). No matter which method is chosen, the fees awarded in common fund cases must be fair and reasonable under the circumstances of a particular case. *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989).

Courts in the Ninth Circuit have typically considered the following factors when reviewing a proposed fee award: 1) the results achieved; 2) awards made in similar cases; 3) the risk of litigation; 4) the skill required and the quality of the work; 5) the contingent nature of the fee and the financial burden carried by the plaintiffs; 6) the

---

[7] The PSLRA has also indicated its preference for a percentage analysis when awarding attorneys' fees in securities class actions. *See* 15 U.S.C. § 78u-4(a)(6) ("Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class.").

MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND REIMBURSEMENT OF EXPENSES; MEM. OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

6

reaction of the class to the proposed fee and expense request; and 7) whether the percentage appears reasonable in light of a lodestar cross-check. *Vizcaino*, 290 F.3d at 1048-50.  Each of these factors supports the requested award of attorneys' fees herein.

## C. Courts in the Ninth Circuit Often Hold Percentages Higher than 30% of the Common Fund to Be a Reasonable Fee

While the guiding principle in the Ninth Circuit is that a fee award should be "reasonable under the circumstances," *WPPSS*, 19 F.3d at 1296, "courts in this circuit, as well as other circuits, have awarded attorneys' fees of 30% or more in complex class actions." *In re Heritage Bond Litig.*, No. 02-ML-1475, 2005 WL 1594403, at *13, *18 (C.D. Cal. June 10, 2005) (the "benchmark percentage should be adjusted" for more complex actions; awarding 33-1/3% of the settlement fund in light of "the substantial proposed benefit to the class, the complexity of the case, the risks associated with pursuing the case to judgment, [and] the absence of any objection."); *id.* at *19 (finding fee award of 33.3% of the common fund warranted in part because the settlement fund represented 36% of the class' total net loss, which the court described as an "exceptional result.").

In light of the significant risks in pursuing this litigation, the favorable result obtained, the significant financial and time commitment of Lead Counsel, the contingent nature of the representation, and the skill and efforts of Lead Counsel, an award of 33-1/3% of the recovery obtained for the Settlement Class is appropriate. While the benchmark for attorneys' fees in securities class actions is often 25% in the Ninth Circuit, where, as here, Lead Counsel have performed substantial work that resulted in a favorable result for the Settlement Class, courts in the Ninth Circuit and this district often grant an award of 30% or more of the common fund as a fee.  *See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming fee award equal to 33-1/3% of the fund); *In re Apollo Grp. Inc. Sec. Litig.*, No. 04 Civ. 2147, 2012 WL 1378677, at *9 (D. Ariz. Apr. 20, 2012) (awarding 33-1/3% of the settlement fund); *Antonopulos v. N. Am. Thoroughbreds, Inc.*, No. 87 Civ. 0979, 1991 WL 427893 (S.D. Cal. May 6, 1991) (awarding fee equal to 33-1/3% of recovery); *In re Maxwell Tech.*

MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND REIMBURSEMENT OF EXPENSES; MEM. OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

7

*Inc. Sec. Litig.*, No. 13 Civ. 00580, slip op. at 6 (S.D. Cal. Feb. 16, 2015) (awarding 32.6% of $3.3 million fund) (Dkt. Nos. 84, 78-2); *Elliot v. China Green Agriculture, Inc. et al.*, No. 10 Civ. 648, slip op. at 5 (D. Nev. Aug. 12, 2014) (awarding 33-1/3% of $2.5 million fund) (Dkt. Nos. 166, 162); *In re Galena Biopharma, Inc. Sec. Litig.*, No. 14 Civ. 367, 2016 WL 3457165, at *11 (D. Or. June 24, 2016) (awarding 32.3% of $27,888,667 fund); *Patel v. Axesstel, Inc.*, No. 14 Civ. 1037, 2015 WL 6458073, at *8 (S.D. Cal. Oct. 23, 2015) (awarding 30% of $1.25 million fund); *Szymborski v. Ormat Tech., Inc.*, No. 10 Civ. 132, 2012 WL 4960098, at *3-4 (D. Nev. Oct. 16, 2012) (awarding 30% of $3.1 million fund).

## IV.   ALL RELEVANT FACTORS CONSIDERED, AN AWARD OF 33-1/3% OF THE SETTLEMENT FUND IS REASONABLE

### A.   Lead Counsel Achieved an Excellent Result for the Settlement Class

Courts have consistently recognized that the result achieved is an important factor to be considered in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("the most critical factor is the degree of success obtained"); *Heritage Bond*, 2005 WL 1594403, at *19 ("The result achieved is a significant factor to be considered in making a fee award.").

The Settlement Fund created here consists of $1.525 million in cash. This amount is clearly an excellent recovery for the Settlement Class, when viewed as a percentage of estimated Class Period damages, assuming complete victory.[8]  *See* Press Decl., ¶ 45; Press Decl., Ex. G at 36, Figure 29 (2017 report by NERA Economic Consulting reviewing settlements reported that in securities class actions where estimated damages were less than $20 million, as they are here, the median recovery was only 18.4% of

---

[8] While experts will differ on the classwide damages, the Settlement is clearly a substantial recovery, and might represent a majority of the potential classwide damages. The corrective disclosure triggered in this suit caused AudioEye's share price to decline by $0.10 (from $0.41 to $0.31). Press Decl., ¶ 45. AudioEye had 77 million shares in the float at the time. *Id.* Clearly some of those shares did not trade during the 10.5 months of the Class Period. Expert trading models estimate between 26 million and 38 million damaged Class shares. *Id.*

MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND REIMBURSEMENT OF EXPENSES; MEM. OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

8

recognized losses); Press Decl., Ex. F at 8, Figure 7 (2017 Cornerstone Research study reviewing settlements reported that in securities class actions where estimated damages were less than $50 million, as they are here, the median recovery was only 7.3% of estimated damages).  Indeed, in cases where the "result achieved" provided less recovery to the Settlement Class than the recovery achieved here, courts have deemed it appropriate to award approximately 33% in fees. *See, e.g. In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 326 (E.D.N.Y. 1993) (awarding fee equal to 33.8% of the recovery where the Settlement recovered 10% of damages); *In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 432 (E.D. Pa. 2001) (awarding fee equal to one third (33-1/3%) of the recovery where the Settlement recovered 11% of estimated damages).

**B.    Awards in Similar Cases**

The requested fee in comparison to the Settlement also supports the approval of Lead Counsel's fee request.  Here, Lead Counsel is requesting a fee of 33-1/3% of the Settlement.[9]  While the Ninth Circuit has held that a fee award of 25% of the settlement fund is an appropriate starting point or benchmark for determining class action fees, "in most common fund cases, the award exceeds that benchmark."[10]  *Vizcaino*, 290 F.3d at 1048-50.[11]

---

[9] Courts throughout the country also award fees of one-third or more of the settlement fund to counsel in complex class actions. *See, e.g., Ray v. Lundstrom*, No. 10 Civ. 199, 2012 WL 5458425, at *3-*4 (D. Neb. Nov. 8, 2012) (awarding 1/3 of $3.1 million settlement); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 735 (E.D. Pa. 2001) (noting that in a study of 287 settlements ranging from less than $1 million to $50 million, "the median turns out to be one-third"); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1292-98 (11th Cir. 1999) (affirming district court award of 33-1/3% attorneys' fee as not an abuse of discretion).

[10]  *See also In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377-79 (N.D. Cal. 1989) (awarding 32.8% of the fund, and upon surveying securities cases nationwide noting, "This court's review of recent reported cases discloses that nearly all common fund awards range around 30%").

[11] The Ninth Circuit stated, "[w]e leave to the district court the task of determining what would be reasonable compensation for creating this common fund," and turning to the issue of what percentage of the common fund should be allocated, the Ninth Circuit

(*footnote continued…*)

---

MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND REIMBURSEMENT OF EXPENSES; MEM. OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Ample precedent exists in this Circuit for granting fees to plaintiffs' counsel that are equal to or greater than the fees requested by Lead Counsel herein. *See, e.g., In re Merix Corp. Sec. Litig.*, No. 04 Civ. 826, slip op. at 8 (D. Or. Jan. 3, 2011) (awarding 33-1/3% of $2.5 million settlement fund) (Dkt. No. 236); *In re Galena Biopharma, Inc. Sec. Litig.*, 2016 WL 3457165, at *11 (awarding 32.3% of $27,888,667 fund); *Patel v. Axesstel, Inc.*, 2015 WL 6458073, at *8 (awarding 30% of $1.25 million fund); *In re Interlink Elec., Inc. Sec. Litig.*, No. 05 Civ. 8133, slip op. at 4 (C.D. Cal. June 1, 2009) (awarding 33-1⁄3% of $5 million settlement fund) (Dkt. Nos. 165, 161); *In re Mikohn Gaming Corp. Sec. Litig.*, No. 05 Civ. 1410, slip op. at 7 (D. Nev. June 6, 2007) (awarding 33-1/3% of $2.8 million settlement fund) (Dkt. No. 96); *In re 2TheMart.com, Inc. Sec. Litig.*, No. 99 Civ. 1127, slip op. at 2 (C.D. Cal. July 8, 2002) (awarding 33-1/3% of $2.7 million settlement fund) (Dkt No. 161).

Furthermore, it is not uncommon for courts in this Circuit to award fees above 25% in cases where lead counsel's lodestar results in a *negative* multiplier – as is the case here. *See, e.g., In re En Pointe Techs., Inc. Sec. Litig.*, No. 01 Civ. 205, slip op. at 5 (S.D. Cal. Sept. 29, 2006) (awarding 33-1/3% of $1.8 million settlement fund; negative lodestar multiplier of 0.66) (Dkt. Nos. 186, 182); *Johnson v. Aljian*, No. 03 Civ. 5986, slip op. at 5 (C.D. Cal. Sept. 16, 2010) (awarding 33-1/3 % of $8.1 million settlement fund; 0.72 negative multiplier) (Dkt. Nos. 283, 272); *In re Maxwell Tech. Inc. Sec. Litig.*, No. 13 Civ. 580, slip op. at 6 (S.D. Cal. Feb. 16, 2015) (awarding 32.6% of $3.3 million fund; 0.84 negative lodestar multiplier) (Dkt. Nos. 84, 78-2); *Elliot v. China Green Agriculture, Inc. et al.*, No. 10 Civ. 648, slip op. at 5 (D. Nev. Aug. 12, 2014) (awarding 33-1/3% of $2.5 million fund; 0.83 negative multiplier) (Dkt. Nos. 166, 162); *Szymborski v. Ormat Tech., Inc.*, No. 10 Civ. 132, 2012 WL 4960098, at *3-4 (D. Nev. Oct. 16, 2012) (awarding 30% of $3.1 million fund; 0.58 negative lodestar multiplier).

---

acknowledged that the benchmark "can [] be adjusted upward…to fit the individual circumstances of th[e] case." *Graulty*, 886 F.2d at 272-73.

---

MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND REIMBURSEMENT OF EXPENSES; MEM. OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Accordingly, Lead Counsel respectfully submits that its fee request is consistent with fee awards granted in similar actions in the Ninth Circuit and is warranted under the facts and circumstances of this case based upon the analysis presented herein.

### C.      The Risks of Litigation

Numerous cases have recognized that the risks of litigation are important factors in determining a fee award. *See, e.g., WPPSS*, 19 F.3d at 1299-1300; *Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974), *abrogated by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); *Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 117 (3d Cir. 1976). As endorsed by the Ninth Circuit, the risk of litigation is an important, if not the foremost, factor in adjusting the attorneys' benchmark percentage upward. *See Vizcaino*, 290 F.3d at 1048 ("[r]isk is a relevant circumstance").

Although Lead Counsel believes the claim is strong on the merits, numerous significant obstacles existed to recovery.  First, there was a risk that the Court would grant Defendants' motions to dismiss for failure to satisfy the pleading standard.  In fact, recent surveys showed that over the last 7 years, more than 50% of all motions to dismiss securities fraud class actions were granted.  Press Decl., Ex. G (NERA Report) at 25, Figure 21.  Even if the claim would have survived the motions to dismiss, there was a risk of dismissal at the summary judgment stage, or at trial, if the jury found Defendants' testimony concerning their good faith reliance on advice from auditors to be credible.  Additionally, even if the claim were to make it to trial and succeed through trial and appeals, there was a significant risk that the Class would be unable to collect, given AudioEye's financial condition and the wasting nature of the applicable liability insurance policy.  Thus, there was a real risk that Lead Counsel could spend thousands of hours, and hundreds of thousands of dollars, on this Litigation and not receive any fee or recoup any of these expenditures.

Moreover, Defendants were represented by extremely capable counsel, who were willing and able to vigorously defend their clients' positions. *See* Press Decl., ¶ 70. In sum, the obstacles to recovery faced by the Class in this securities class action were

MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND REIMBURSEMENT OF EXPENSES; MEM. OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

11

significant, particularly given the strict pleading requirements of the PSLRA and applicable proof requirements during the later stages of the case (and on appeal).

### D.   The Skill Required and the Quality and Efficiency of the Work

The "prosecution and management of a complex national class action requires unique legal skills and abilities." *Knight v. Red Door Salons, Inc.*, No. 08 Civ. 1520, 2009 WL 248367, at *6 (N.D. Cal. Feb. 2, 2009). Here, the quality of Lead Counsel's work on this case is reflected in the substantial recovery obtained. *See Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 547-48 (S.D. Fla. 1988).

Lead Counsel's supporting declaration includes firm resumes for KM and BFFB, which describe each firm's background and experience in conducting securities litigation.  Press Decl., Ex. D; Friedman Decl., Ex. 3.  As this submission demonstrates, Lead Counsel have extensive and significant experience in the highly-specialized field of securities class action litigation.

Given the complexity of the issues presented in this Litigation, only skilled counsel who applied themselves diligently could have obtained such a favorable recovery.  Press Decl., ¶¶ 67-69.  During the pendency of this Litigation, Lead Counsel, as detailed in the Press Decl., conducted an in-depth and ongoing investigation of the Settlement Class' claims prior to reaching the Settlement. Lead Counsel's efforts also included, *inter alia*, drafting a detailed CAC; consulting with a damages expert; briefing an opposition to Defendants' motions to dismiss the CAC; researching and drafting mediation briefing; and engaging in arm's-length settlement negotiations including the participation in a full-day mediation with Defendants and further negotiations under the supervision of a third-party mediator. *See, e.g.*, Press Decl., ¶¶ 5, 18, 33, 36-38, 43, 67. Lead Counsel also prepared for and engaged in negotiating the terms of the Stipulation and drafting the related settlement documents. Press Decl., ¶ 40.[12]

---

[12] Lead Counsel will continue to perform legal work on behalf of the Settlement Class should the Court approve the proposed Settlement. Additional resources will be expended assisting Settlement Class Members with their Proofs of Claim and related inquiries and working with the claims administrator, JND Legal Administration, to

*(footnote continued…)*

MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND REIMBURSEMENT OF EXPENSES; MEM. OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

12

1
2
3
4
5
6
7
8
9
10

The quality of opposing counsel is also important in evaluating the quality of the work done by Lead Counsel. *See, e.g., In re Equity Funding Corp. of Am. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977) (court recognized that "plaintiffs' attorneys in this class action have been up against established and skillful defense lawyers, and should be compensated accordingly").  Throughout the Litigation, Lead Counsel faced formidable opposition from the prominent law firms representing Defendants – DLA Piper LLP and Sichenzia, Ross Ference Kesner LLP.  In the face of knowledgeable and solid opposition, Lead Counsel were able to develop a case that was sufficiently strong to encourage Defendants to settle the case on excellent terms for the Settlement Class. Lead Counsel's diligent efforts should be rewarded.

11
12

### E.   The Contingent Nature of the Case and the Financial Burden Carried by Lead Counsel

13
14
15
16
17
18
19
20
21

The Ninth Circuit recognizes that the determination of a fair fee must include consideration of the contingent nature of the fee and the difficulties which were overcome in obtaining the settlement: "[i]t is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *WPPSS*, 19 F.3d at 1299 (citing Richard Posner, *Economic Analysis of Law*, § 21.9, at 534-35 (3d ed. 1986)). In fact, contingent fees that may far exceed the typical non-contingent market value of the services are accepted in the legal profession as a legitimate way of assuring competent representation for Lead Plaintiff(s), who could not afford to pay on an hourly basis regardless of whether they win or lose. *Id.*

22
23
24
25
26

Lead Counsel have received no compensation for this Litigation, and incurred significant expenses for the benefit of the Class. Any fee award or expense payment to counsel has always been at risk and completely contingent on the result achieved. Press Decl., ¶¶ 71, 77.

27
28

ensure the smooth progression of claims processing and final distribution.  Lead Counsel will not seek additional compensation for this work.

MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND REIMBURSEMENT OF EXPENSES; MEM. OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**F.      The Reaction of the Settlement Class Supports the Requested Award**

Courts often consider the reaction of the class when deciding whether to award the requested fee. *See, e.g., Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007) ("[T]he lack of objection from any Class Member supports the attorneys' fees award."); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) (finding that a "low level of objection[s] is a rare phenomenon").

As sworn by the Claims Administrator, 822 Postcard Notices have been disseminated to potential Class Members and Summary Notice was published.  Horn Aff., ¶ 11; Horn Aff., Exs. C-D. Class Members were informed in the Postcard Notice, Long Form Notice and the Summary Notice that Lead Counsel could apply for attorneys' fees of up one third of the Settlement Fund (plus interest), plus reimbursement of expenses (not to exceed $75,000), and were advised of their right to object to Lead Counsel's fee and expense request. To date, no objections to the fee and expense requests contained in the Postcard Notice, Long Form Notice and the Summary Notice, or any aspect of the Settlement, has been filed with the Court or received by the Claims Administrator or Lead Counsel.  Press Decl., ¶ 82; Horn Aff., ¶ 16.

**G.      A Lodestar Cross-Check Shows the Fee Request Is Reasonable**

As a "cross-check" on the reasonableness of a requested fee award, courts often compare counsel's "lodestar" (a compilation of the hours performed at the various rates charged for the professionals providing the services herein) with the fee request made under the percentage-of-the-recovery method. *See, e.g., Vizcaino*, 290 F.3d at 1050; *Fischel v. Equitable Life Assurance Soc'y of United States*, 307 F.3d 997, 1007 (9th Cir. 2002). Moreover, "the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted [and] may provide a useful perspective on the reasonableness of a given percentage award." *Vizcaino*, 290 F.3d at 1050.

As detailed herein and in the Press Decl., the work undertaken by Lead Counsel wholly supports the Court's approval of Lead Counsel's fee request.  Lead Counsel

MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND REIMBURSEMENT OF EXPENSES; MEM. OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

14

devoted 1122.60 hours to this Litigation, amounting to $768,704.50 in billable time.[13] Press Decl., ¶ 83. As a result, Lead Counsel's request for 33-1/3% of the Settlement Fund, amounts to substantially *less* than the value of the time actually spent on this case. In other words, Lead Counsel's request for attorneys' fees reflects a discount on the time Lead Counsel actually spent litigating the matter and requires the application of a *negative* multiplier.[14] This fact militates in favor of the reasonableness of Lead Counsel's Fee Request, as courts have repeatedly recognized that a negative multiplier supports the reasonableness of the percentage fee request.   *See, e.g., In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *16 (resulting negative multiplier under lodestar cross-check analysis "suggest[ed] that the percentage-based amount is reasonable and fair based on the time and effort expended by class counsel"); *Gudimetla v. Ambow Educ. Holding*, No. 12 Civ. 5062, 2015 WL 12752443, at *9 (C.D. Cal. Mar. 16, 2015) (finding percentage fee request in securities fraud case reasonable where counsel's fee request constituted a large negative multiplier of their lodestar amount); *In re China Intelligent Lighting & Elec., Inc.*, No. 11 Civ. 2768, 2015 WL 12765018, at *9

---

[13] *See* Press Decl., Ex. B; Friedman Decl. Ex. 1.  The rates billed by Lead Counsel (ranging from $325 to $985 per hour) for attorneys (*id.*), are comparable to peer plaintiffs and defense-side law firms litigating matters of similar magnitude. *See* Press Decl., ¶ 84 and Ex. H.  Moreover, the Supreme Court and other courts have also held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds. *See, e.g., Missouri v. Jenkins*, 491 U.S. at 283-84 (1989) (endorsing "an appropriate adjustment for delay in payment" by applying "current" rate); *Rutti v. Lojack Corp. Inc.*, No. 06 Civ. 350, 2012 WL 3151077, at *11 (C.D. Cal. July 31, 2012) ("it is well-established that counsel is entitled to current, not historic, hourly rates") (citing *Jenkins*, 491 U.S. at 284).

[14] As courts in this Circuit often award multipliers in the 2-4 range, it is respectfully submitted that this Court should find that the lodestar cross-check here underscores the reasonableness of Lead Counsel's Fee Request. *In re Portal Software, Inc. Sec. Litig.*, No. 03 Civ. 5138, 2007 WL 4171201, at *16 (N.D. Cal. Nov. 26, 2007) ("multipliers are frequently greater than one and often on the order of two to four"). *See, e.g., Vizcaino*, 290 F.3d at 1048-50 (applying 3.65 multiplier); *In re Veritas Software Corp. Sec. Litig.*, No. 03 Civ. 283, 2005 WL 3096079, at *13 (N.D. Cal. Nov. 15, 2005) (applying 4.0 multiplier where motion to dismiss was pending and no formal discovery taken).

---

MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND REIMBURSEMENT OF EXPENSES; MEM. OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

15

(C.D. Cal. Mar. 9, 2015) (same).  *Accord In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL No. 1827, 2013 WL 149692, at *1 (N.D. Cal. Jan. 14, 2013) (finding percentage fee request reasonable where lodestar cross-check resulted in negative multiplier: "The negative multiplier cross-check serves to confirm the reasonableness of the fees requested."); *In re Animation Workers Antitrust Litig.*, No. 14 Civ. 4062, 2016 WL 6663005, at *3 (N.D. Cal. Nov. 11, 2016).

Therefore, Lead Counsel submit that the instant fee request is fair and reasonable when cross-checked against Lead Counsel's lodestar.

## V.   LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED

The Court should approve Lead Plaintiffs' requested payment of Lead Counsel's expenses.  "There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014) (quotation marks and citations omitted).  "To that end, courts throughout the Ninth Circuit regularly award litigation costs and expenses – including photocopying, printing, postage, court costs, research on online databases, experts and consultants, and reasonable travel expenses – in securities class actions, as attorneys routinely bill private clients for such expenses in non-contingent litigation."  *Destefano v. Zynga, Inc.*, No. 12 Civ. 4007, 2016 WL 537946, at *22 (N.D. Cal. Feb. 11, 2016) (citing *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (noting that a prevailing plaintiff may be entitled to costs including, among other things, "postage, investigator, copying costs, hotel bills, meals," and messenger services)).

To prosecute this Litigation to Settlement, Lead Counsel incurred reasonable and necessary costs and expenses in the amount of $26,250.47.[15] These expenses were

---

[15] Lead Counsel was informed by counsel for the intervenors that they had incurred $3,775.63 in expenses in connection with their commencement of the initial complaint in this action and their motion to intervene. *See* Press Decl., Ex. I. Counsel for the intervenors requested that their expenses be included in Lead Counsel's request for

*(footnote continued...)*

MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND REIMBURSEMENT OF EXPENSES; MEM. OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

16

incurred largely in conjunction with the engagement of a damages consultant, investigation services, and a mediator. Press Decl., ¶ 86; Press Decl. Ex. C; Friedman Decl. Ex. 2.  Lead Counsel therefore seeks payment of these costs and expenses related to the prosecution of this Litigation on behalf of the Class.  Additionally, because the expenses at issue are the types reimbursed by individual clients in the marketplace, they should be paid from the common fund.

Because the expenses were incurred with no guarantee of recovery, Lead Counsel had a strong incentive to keep them as low as reasonably possible – and did so. Indeed, total expenses of $26,250.47 is significantly less than the $75,000.00 estimate contained in the Postcard Notice. *See* Horn Aff., Ex. A. Moreover, the fact that no Class Members objected to the payment of Lead Counsel's estimated expenses further evidences its reasonableness.

## VI.     CONCLUSION

For the reasons set forth herein, Lead Counsel respectfully request that the Court award: (i) attorneys' fees in the amount of 33-1/3% of the Settlement Fund, plus interest at the same rate as is earned by the Settlement Fund; and (ii) reimbursement of $26,250.47 in expenses incurred in successfully prosecuting this Litigation, plus interest at the same rate as is earned by the Settlement Fund.


Dated: April 3, 2017                         Respectfully Submitted,
                                             **KIRBY McINERNEY LLP**

                                              */s/ Ira M. Press*
                                             Ira M. Press (admitted *pro hac vice*)
                                             ipress@kmllp.com
                                             825 Third Avenue, 16th Floor
                                             New York, NY 10022
                                             Telephone: (212) 371-6600
                                             Fax: (212) 751-2540

reimbursement of litigation expenses.   Accordingly, the $26,250.47 amount includes intervenors' counsel's expense amount of $3,775.63 sought for reimbursement.

*Lead Counsel for Lead Plaintiffs and the Class*

**BONNETT, FAIRBOURN,
FRIEDMAN & BALINT, P.C.**
Andrew S. Friedman (AZ #: 005425)
2325 E. Camelback Rd. Ste. 300
Phoenix, AZ 85016
Telephone: (602) 274-1100
Fax: (602) 274-1199
Email:  afriedman@bffb.com

*Liaison Counsel for Lead Plaintiffs and the Class*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**

I hereby certify that on April 3, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail notice list, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice list.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

*/s/ Ira M. Press*